VENABLE LLP
William Andrew Hector (SBN 298490)
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: 415-653-3750
Facsimile: 415-653-3755
Email: wahector@venable.com

Frank M. Gasparo (*Pro Hac Vice*)
Ralph A. Dengler (*Pro Hac Vice*)
Ian G. Paquette (*Pro Hac Vice*)
Parker G. Zimmerman (*Pro Hac Vice*)

151 West 42nd Street, 49th Fl.
New York, NY 10036
Telephone: 212-307-5500
Facsimile: 212-307-5598
Email: fmgasparo@venable.com
radengler@venable.com
igpaquette@venable.com
pgzimmerman@venable.com

*Attorneys for Plaintiffs*



**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MG FREESITES LTD<br><br>Plaintiff,<br><br>v.<br><br>DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C.<br><br>Defendants. | Case No. 3:23-cv-03674-EMC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT** |

MG Freesites Ltd n/k/a Aylo Freesites Ltd ("Aylo Freesites"), Aylo Premium Ltd ("Aylo Premium" f/k/a "MG Premium Ltd"), and Aylo Billing Limited ("Aylo Billing" f/k/a "MG Billing Limited") (collectively, "Aylo" or "Plaintiffs")[1] for their First Amended Complaint for

[1] Plaintiffs will seek leave to update the case caption to reflect MG Freesites Ltd's name change to Aylo Freesites Ltd and to list the additional Plaintiffs Aylo Premium Ltd and Aylo Billing Limited.

Declaratory Judgment of Non-Infringement against DISH Technologies L.L.C. and Sling TV L.L.C. (collectively "Defendants") by and through their attorneys, allege as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of noninfringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and for other relief the Court deems just and proper.

2. This Declaratory Judgment action seeks a determination that the following adult streaming service websites: Pornhub (pornhub.com), Pornhub Premium (pornhubpremium.com), RedTube (redtube.com), RedTube Premium (redtubepremium.com), YouPorn (youporn.com), YouPorn Gay (youporngay.com), YouPorn Premium (youpornpremium.com), Tube8 (tube8.com), GayTube (gaytube.com), Brazzers (brazzers.com), Digital Playground (digitalplayground.com), Men.com (men.com), Babes.com (babes.com), SeanCody (seancody.com), TransAngels (transangels.com), Reality Kings (realitykings.com), MOFOS (mofos.com), Twistys (twistys.com), Whynotbi (whynotbi.com), FAKEhub (fakehub.com), FAKETAXI (faketaxi.com), lesbea (lesbea.com), Dane Jones (danejones.com), SEXYhub (sexyhub.com), I Know That Girl (iknowthatgirl.com), mile high (milehighmedia.com), Bang Bros (bangbros.com) (collectively, the "Accused Websites"), do not infringe and have not infringed, either directly or indirectly (literally or under the doctrine of equivalents), under 35 U.S.C. § 271 (or any sub-section thereof) at least:

- Claim 10 of United States Patent No. 10,469,555 ("the '555 Patent") (Exhibit 1);
- Claim 1 of United States Patent No. 10,757,156 ("the '156 Patent") (Exhibit 2);
- Claim 14 of United States Patent No. 11,470,138 ("the '138 Patent") (Exhibit 3);
- Claim 16 of United States Patent No. 10,469,554 ("the '554 Patent") (Exhibit 4);
- Claim 1 of United States Patent No. 11,677,798 ("the '798 Patent") (Exhibit 5);
- Claim 8 of United States Patent No. 9,407,564 ("the '564 Patent") (Exhibit 6);
- Claim 22 of United States Patent No. 10,951,680 ("the '680 Patent") (Exhibit 7);
- Claim 1 of United States Patent No. 8,868,772 ("the '772 Patent") (Exhibit 8).

(collectively "the Asserted Patents"). The Accused Websites above are exemplary and any

additional websites owned or operated by Aylo are non-infringing for at least the same or similar reasons as set forth below.

3. Aylo respectfully requests this relief because Defendants have accused websites owned or operated by Aylo that practice HTTP Live Streaming ("HLS") as infringing patents in DISH's "adjustable bit rate" streaming patent portfolio ("DISH's ABR Portfolio").

4. For example, on July 7, 2023, DISH Network L.L.C. ("DISH Network") sent "MindGeek Montreal," which is not a legal entity, a communication attaching "exemplary claim charts showing how three of DISH's ABR patents read on MindGeek's streaming services." Exhibits 9-12.

5. The attached claim charts purported to show that "exemplary aspects of the Pornhub streaming services and products" infringe at least claim 10 of the '555 Patent, claim 1 of the '156 Patent, and claim 14 of the '138 Patent. *Id.*

6. These claim charts, combined with: (1) DISH Network's prior March 17, 2023 letter accusing infringement and attaching a list of patents in Defendants' entire ABR Portfolio (including the Asserted Patents); (2) Defendants' direction in the March 17, 2023 letter to review Defendants' success asserting patents from DISH's ABR Portfolio at the ITC including the '156 Patent, the '555 Patent, the '554 Patent, and the '564 Patent; and (3) Defendants' pattern of suing multiple alleged infringers in multiple district courts (including this District) on various patents from DISH's ABR Portfolio—including the '156 Patent, the '555 Patent, the '554 Patent, the'564 Patent, and the '680 Patent—prompted Aylo to file this action for non-infringement of the Asserted Patents.

**PARTIES**

7. Aylo Freesites (f/k/a "MG Freesites Ltd") is a private limited company organized and existing under the laws of the Republic of Cyprus, with a place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540.

8. Aylo Freesites operates the Pornhub (pornhub.com), Pornhub Premium (pornhubpremium.com), RedTube (redtube.com), RedTube Premium (redtubepremium.com), YouPorn (youporn.com), YouPorn Gay (youporngay.com), YouPorn Premium

(youpornpremium.com), Tube8 (tube8.com), and GayTube (gaytube.com) Accused Websites.

9. Aylo Premium (f/k/a "MG Premium Ltd") is a private limited company organized and existing under the laws of the Republic of Cyprus with a place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540.

10. Aylo Billing (f/k/a "MG Billing Limited") is a private limited company organized and existing under the laws of Ireland, with a place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540.

11. Aylo Premium operates (and Aylo Billing handles certain related billing for) the Brazzers (brazzers.com), Digital Playground (digitalplayground.com), Men.com (men.com), Babes.com (babes.com), SeanCody (seancody.com), TransAngels (transangels.com), Reality Kings (realitykings.com), MOFOS (mofos.com), Twistys (twistys.com), Whynotbi (whynotbi.com), FAKEhub (fakehub.com), FAKETAXI (faketaxi.com), lesbea (lesbea.com), Dane Jones (danejones.com), SEXYhub (sexyhub.com), I Know That Girl (iknowthatgirl.com), mile high (milehighmedia.com), and Bang Bros (bangbros.com) Accused Websites.

12. Aylo is an industry leader and pioneer in offering world-class adult content platforms, including the Accused Websites. Aylo empowers its communities by celebrating diversity, inclusion, and expression and strives to provide trusted environments to enable the safest user experience.

13. Aylo offers its adult content platforms throughout the world, including in California.

14. Aylo no longer offers its adult content platforms in certain locations, such as Utah, Virginia, Mississippi, and Arkansas.

15. Upon information and belief, DISH Technologies L.L.C. f/k/a EchoStar Technologies L.L.C. ("DISH Technologies") is a limited liability company organized and existing under the laws of the State of Colorado, with a place of business at 9601 South Meridian Blvd, Englewood, CO 80112.

16. Upon information and belief, DISH Technologies is the sole owner of the Asserted Patents. Exhibits 1-5 and 7 at Cover (listing DISH Technologies as assignee); Exhibits 6 and 8 at Cover (listing DISH Technologies' prior name EchoStar Technologies L.L.C. as the assignee).

The assignment records at the United States Patent and Trademark Office show that all Asserted Patents are assigned to DISH Technologies. Exhibit 13.

17. Upon information and belief, Sling TV L.L.C. ("Sling TV") is a limited liability company organized and existing under the laws of the State of Colorado, with a place of business at 9601 South Meridian Blvd, Englewood, CO 80112. *See DISH Technologies L.L.C v. ICON Health & Fitness, Inc*., No. 1-21-cv-00531, D.I. 1, at 1 (D. Del.).

18. Upon information and belief, Sling TV is the exclusive licensee of the Asserted Patents.

**JURISDICTION AND VENUE**

19. This Court has subject-matter jurisdiction over this action, which arises under the Patent Laws of the United States (35 U.S.C. § 1, *et seq*.), under 28 U.S.C. §§ 1331 and 1338(a) and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, based on an immediate, definite and concrete, real and substantial, justiciable controversy between Aylo and Defendants for declaratory judgment of noninfringement of the Asserted Patents.

20. This Court has personal jurisdiction over Defendants pursuant to the laws of the State of California, including California's long-arm statute (California Code of Civil Procedure § 410.10).

21. This action arises out of the prosecution of U.S. Application No. 11/116,783, issued as the '772 Patent, which was prosecuted by two California attorneys (Kevin O. Grange and Dan De Vos) at the Silicon Valley office of the law firm Blakely Sokoloff Taylor & Zafman LLP, located in this District. Exhibit 14.

22. The '772 Patent is the ultimate parent of all of the Asserted Patents and of all the patents in DISH's ABR Portfolio. Exhibits 1-8 at 1-2.

23. Additionally, Defendants have purposefully availed themselves of the privilege of conducting activities within this State by filing a patent infringement lawsuit against Jadoo TV, Inc. ("Jadoo"), a California corporation, in this District, asserting that Jadoo infringed the '564 Patent (one of the Asserted Patents) and other related patents that share the same specifications as the Asserted Patents, namely: United States Patent Nos. 7,818,444; 8,402,156; and 9,071,668. *See DISH Technologies L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc.*, No. 5:18-cv-05214-EJD, D.I. 1, ¶¶ 7-12, 26-139 (N.D. Cal.) ("Jadoo Litigation").

24. That lawsuit, filed in 2018, was eventually dismissed pursuant to a Consent Judgment and Stipulation Injunction Pursuant to Stipulation of the Parties on May 28, 2021. *Id.*, D.I. 97.

25. Defendants have also litigated copyright claims against Jadoo in this District (D.I. 18 at 5) and were involved in Jadoo's bankruptcy proceedings in this District as creditors (*see In re Jadoo TV, Inc., and CloudStream Media, Inc.*, Bankruptcy Case No. 19-41283 (WJL), D.I. 263 (Bankr. N.D. Cal.) ("Jadoo Bankruptcy")).

26. In the Jadoo Bankruptcy, Defendants argued that the Jadoo Litigation was "progressing toward trial" and noted that this District was their "desired forum" for the Jadoo Litigation. *Id.* at 10-11. Further, in the more than five months of active litigation in the Jadoo Litigation prior to a stay, the parties progressed beyond the initial stages of litigation including filing a Joint Case Management Statement and Proposed Order, exchanging initial disclosures, and Defendants also served 314 pages of infringement contentions detailing infringement of the '564 Patent and other patents in DISH's ABR Portfolio related to the Asserted Patents. *See* Jadoo Bankruptcy, D.I. 264 at 2-3.

27. The parties also submitted a mediation statement and attended a mediation where they discussed a stipulation to stay while continuing discussions on Jadoo's alleged infringement, damages, a stipulated injunction, and a mechanism for enforcement of the injunction. *Id.*

28. During the Jadoo Litigation's stay, the parties continued discovery and the parties amended and filed a Protective Order to allow the inspection of Jadoo's source code. *Id.* at 3. Defendants also produced over 15,000 documents in the Jadoo Litigation. *Id.* at 3. Further, Jadoo's counsel made available for inspection Jadoo's source code at its counsel's San Francisco office. *Id.*

29. The parties filed a second Stipulation to Extend the Stay of Proceedings to continue settlement discussions. *Id.* Defendants provided Jadoo with two requests to address and verify the changes that Jadoo claimed to have made to eliminate the infringing feature. *Id.*

30. Although Jadoo filed for bankruptcy after about nine months of litigation, the parties continued to discuss settlement. *Id* at 3. The parties exhausted settlement efforts (*id.* at 3), and DISH Technologies and Sling TV moved to reopen the case (*see* Jadoo Litigation, D.I. 50).

31. The parties filed multiple discovery dispute letters and responses to them (*see* Jadoo Litigation, D.I. 65, 67, 68, 70, 71, 73, and 74), and the court held multiple hearings related to those discovery disputes (*see* Jadoo Litigation, D.I. 76 and 82).

32. After nearly three years of litigation and settlement discussions, Defendants and Jadoo filed a Joint Motion to enter Final Consent Judgment and Stipulated Injunction Pursuant to Stipulation of the Parties (*see* Jadoo Litigation D.I. 96) after the court held a pre-settlement conference (*see* Jadoo Litigation D.I. 93) and a settlement conference (*see* Jadoo Litigation D.I. 94).

33. According to Defendants, in just two years (out of the nearly three years of litigation and settlement negotiations) in the Jadoo Litigation, Defendants had already "conducted discovery and expended significant resources in litigating and attempting to settle the Patent Litigation." Jadoo Bankruptcy, D.I. 263 at 10.

34. Thus, Defendants have purposefully directed their patent enforcement activity of DISH's ABR Portfolio in the Northern District of California against a California corporation by asserting in the Northern District of California the '564 Patent (one of the Asserted Patents) and other patents in the family against Jadoo, then located at "5880 West Las Positas Boulevard Suite 37, Pleasanton, California 94588." Jadoo Litigation, D.I. 1, ¶3 (N.D. Cal.). Upon information and belief, Jadoo now resides at a different address in the Northern District of California.

35. By (1) filing and litigating the Jadoo Litigation in this District, and by asserting the '564 Patent and other patents related to the '564 Patent and the other Asserted Patents in this District, (2) filing a claim relating to damages for the Jadoo Litigation in the Jadoo Bankruptcy in this District, and (3) participating in mediation and settlement negotiations in this District with Jadoo, Defendants have purposefully availed themselves of the benefits and protections of California's laws such that they should reasonably anticipate being haled into court in this District.

36. This Complaint for Declaratory Judgement thus arises out of Defendants' enforcement activities in this District asserting the '564 Patent and other patents in the same family as the Asserted Patents, as well as the prosecution of the application that eventually issued as the '772 Patent (the parent for all of the other Asserted Patents) by California patent attorneys in this

District.

37. Defendants have also purposefully availed themselves of the protections of the State of California by negotiating a resolution of the Jadoo Litigation with a then (and now) California resident, Jadoo, and entering into a Consent Judgment and Stipulation Injunction Pursuant to Stipulation of the Parties on May 28, 2021. Jadoo Litigation, D.I. 97.

38. For instance, Defendants agreed that "[t]his Court has and shall retain personal jurisdiction over the Parties with respect to the above captioned matter, subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and jurisdiction to enforce this Consent Judgment." *Id.*, ¶1.

39. Defendants also retained at least one Baker Botts L.L.P. attorney located in this District for the Jadoo Litigation. *Id.*, 1.

40. That same Palo Alto-based attorney from Baker Botts, Hopkins Guy, was lead attorney for Defendants' litigations asserting five of the Asserted Patents in Delaware, some of which are pending, the Eastern District of Texas, and the International Trade Commission.

41. Additionally, Defendants have engaged in such continuous and systematic forum directed activities, even beyond those relating to enforcement of the '564 Patent and other family members of the Asserted Patents, such that Defendants should be considered essentially "at home" in California and that maintenance of suit in California would not offend traditional notions of fair justice.

42. For example, Defendants advertise in this District that they offer Aylo's own content (e.g., Brazzers and Reality Kings), on Defendants' products. Exhibit 15. Upon information and belief, Defendants do not offer this content in certain states, such as Utah.

43. In addition, Defendants sell and offer to sell products allegedly covered by DISH's ABR Portfolio, including the Asserted Patents. D.I. 18-3.

44. Defendants sell and offer to sell such products allegedly covered by DISH's ABR Portfolio, including the Asserted Patents, by directing advertisements specifically toward residents of California and this District. Exhibit 16.

45. Upon information and belief, Defendants have engaged with at least twelve authorized

retailers within 100 miles of this courthouse to sell and offer to sell their products. Exhibit 17.

46. Further, upon information and belief, Defendants maintain an office in Foster City, CA and advertise jobs for "Sling TV" in that office. Exhibit 18.

47. Additionally, upon information and belief, DISH Network L.L.C. is an affiliate of DISH Technologies L.L.C., and DISH Network L.L.C. commercializes the Asserted Patents (*see DISH Technologies LLC et al v. IFIT Health & Fitness, Inc. f/k/a ICON Health & Fitness, Inc.*, No. 1:23-cv-00963 (D. Del.), D.I. 1 at ¶ 12) and directly advertises its satellite television packages to consumers in this District (*see* https://www.dish.com/availability/ca/san-francisco).

48. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c).

49. Venue for purposes of a declaratory-judgment action regarding noninfringement of a patent does not fall under § 1400(b), but instead falls under the general venue provisions of 28 U.S.C. § 1391.

50. Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a defendant resides. A corporate defendant "reside[s] . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

51. Because Defendants are subject to the personal jurisdiction of the Northern District of California for this action as discussed above, Defendants are deemed to reside in the Northern District of California under 28 U.S.C. § 1391(c)(2) for purposes of venue.

52. Defendants also admitted venue was proper in the Jadoo Litigation, specifically in the Consent Judgment and Stipulation Injunction Pursuant to Stipulation of the Parties on May 28, 2021. *DISH Technologies L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc.*, No. 5:18-cv-05214-EJD, D.I. 97, ¶2 ("Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(b)").

53. Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

<u>Background of the Asserted Patents</u>

54. The first patent in the family of the Asserted Patents, the '772 Patent (one of the Asserted Patents), was filed on April 28, 2005 as non-provisional United States Application Number

11/116,783 ("'783 Application"). Exhibit 8 at Cover. The law firm of Blakely Sokoloff Taylor & Zafman LLP ("Blakely law firm"), located in Sunnyvale California in this District, was given power of attorney to prosecute the '783 Application; and two Silicon Valley attorneys, Kevin O. Grange and Daniel M. De Voss, prosecuted the '783 Application. Exhibit 14.

55. For example, Kevin O. Grange of the Blakely law firm filed amendments to claims of the '783 Application and accompanying remarks on September 11, 2008. Exhibit 14 at 1-13. Mr. Grange concluded the remarks by stating to the United States Patent Office Examiner "[i]f the Examiner believes a telephone interview would expedite the prosecution of this application, the Examiner is invited to contact Kevin Grange at (408) 720-8300" and signed the remarks with the address "1279 Oakmead Parkway Sunnyvale, CA 94085-4040." *Id.* at 13.

56. The "(408)" area code covers the San Jose metropolitan area within this District. Mr. Grange was listed on the Blakely law firm's website as being located at the firm's Silicon Valley office, as a member of the California Bar, and admitted to the U.S. District Court for Northern California. *See* https://web.archive.org/web/20091019102651/http://www.bstz.com/attorneys/kevin-o-grange.

57. Upon information and belief, Mr. Grange is now a partner with the law firm Lowenstein Sandler in Palo Alto and Utah. https://www.lowenstein.com/people/attorneys/kevin-grange.

58. Similarly, Daniel M. De Vos conducted an interview with the Examiner, submitted claim amendments, and submitted remarks in support of said amendments. Exhibit 14 at 14-34. Mr. De Vos also signed his remarks with the Sunnyvale, CA address and "(408)" area code phone number. *Id.* at 34.

59. Mr. De Vos was also listed on the Blakely law firm's website as being located at the firm's Silicon Valley office and a member of the California Bar. *See* https://web.archive.org/web/20091019102625/http://www.bstz.com/attorneys/dan-de-vos.

60. Upon information and belief, Mr. De Vos is currently a founding member of the law firm Nicholson De Vos Webster & Elliott LLP located in San Jose, CA. *See* https://www.ndwe.com/ndwe-team/dan-de-vos/.

61. Every other Asserted Patent claims priority to the '772 Patent, which issued from the

’783 Application that was prosecuted by Blakely law firm lawyers in this District. Exhibits 1-7 at 1-2.

Initial Correspondence

62. On March 17, 2023, DISH Network’s counsel sent to “MindGeek Montreal” a letter stating that “DISH owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology,” and that it “has analyzed the streaming technology that MindGeek uses for providing content to its customers.” Exhibit 19 at 1.

63. The letter contended that MindGeek’s technology “appears to be covered by, for example, claim 1 of the ’156 Patent” and “MindGeek would benefit from a license to the ’156 Patent and other DISH patents in this portfolio, including the enclosed list of U.S. and international patents and patent applications.” *Id.*

64. DISH Network’s counsel further alleged that “[t]his technology is used at least in adaptive bit-rate streaming standards, such as HTTP Live Streaming (‘HLS’) and MPEG-DASH.” *Id.*

65. Although this correspondence was addressed to the Chief Legal Officer of “MindGeek Montreal,” “MindGeek Montreal” is not an entity that exists and therefore does not operate any streaming services.

66. The letter’s reference to “MindGeek” and “MindGeek technology” may refer to a number of different legal entities, such as MG Freesites Ltd (now Aylo Freesites Ltd), which operates the Accused Websites in the Pornhub Network (*e.g.*, Pornhub.com, RedTube.com, Tube8.com, YouPorn.com) or MG Premium Ltd (now Aylo Premium Ltd), which operates a number of premium streaming websites—all allegedly using the HLS streaming standard.

67. In the March 17th letter, DISH Network also directed MindGeek to a recent ITC investigation “finding that products being imported into the U.S. are infringing the ’156 Patent and other patents in this portfolio.” *Id.* DISH Network’s counsel further stated, “We encourage you to review those materials, which are enclosed, because the [International Trade] Commission found that products using HLS and/or MPEG-DASH infringe certain claims of those patents.” *Id.*

68. Enclosed with the March 17th letter was DISH’s ABR Portfolio entitled “DISH’S

PATENTS & PATENT APPLICATIONS DIRECTED TO ADJUSTABLE BIT-RATE VIDEO STREAMING TECHNOLOGY." Exhibits 19-20.

69. The list included the '156 Patent, the '555 Patent, the '138 Patent, the '554 Patent, the '564 Patent, the '680 Patent, the '772 Patent, and Application No. 17/962,231, which issued as the '798 Patent. Exhibits 5 and 20.

70. On April 13, 2023, counsel for Aylo responded to DISH Network stating, "We are reviewing DISH's letter, and the allegations therein, and will be in touch." Exhibit 21.

Further Infringement Allegations

71. On July 7, 2023, DISH Network sent counsel for Aylo an email stating, "I write to follow-up regarding the potential licensing of DISH's ABR patent portfolio. Please find attached **exemplary** claim charts showing how three of DISH's ABR patents **read on MindGeek's streaming services**. Are you available next week to discuss terms for a license to DISH's portfolio?" Exhibit 9 (emphases added).

72. The DISH claim charts purport to show how MindGeek's (now Aylo's) exemplary streaming services ("Pornhub streaming services and products") infringe at least claim 10 of '555 Patent, claim 1 of the '156 Patent, and claim 14 of the '138 Patent based on use of the HLS standard, citing repeatedly to Request for Comments: 8216—HTTP Live Streaming, August 2017 ("RFC 8216"). Exhibits 10-12.

73. Despite the general references to "DISH" in the letters and claim charts, upon information and belief, DISH Technologies is the sole owner of the Asserted Patents, and, upon information and belief, Sling TV is the exclusive licensee of the Asserted Patents. *DISH Technologies L.L.C and Sling TV L.L.C. v. ICON Health & Fitness, Inc.*, No. 1-21-cv-00531-GBW, D.I. 1, at 1-4 (D. Del.); *see also* Paragraphs 16, 18; Exhibits 1-8, and 13. Further, Defendants themselves refer to DISH Technologies and Sling TV as "DISH." *E.g.*, *DISH Technologies L.L.C and Sling TV L.L.C. v. ICON Health & Fitness, Inc.*, No. 1-21-cv-00531-GBW, D.I. 1 at 1; D.I. 18, at 1.

74. On July 12, 2023, counsel for Aylo responded confirming receipt of DISH's claim charts for the '156 Patent, '555 Patent, and '138 Patent and stated, "We'll get back to you to arrange a

call once we have had a chance to review the charts." Exhibit 22.

75. On July 21, 2023, counsel for Aylo asked for DISH Network's counsel's availability for a call and wrote, "we would like to discuss DISH's July 7th claim charts for the '156, '555, and '138 Patents. Also, we would like to discuss the pending appeal at the Federal Circuit on two of the charted patents (the '156 and '555 Patents) of the DISH ITC matter you referenced in your March 17th letter. Please let us know your availability next week to discuss the above. And if you have other items to discuss, such as other DISH claim charts for us to consider, kindly let us know so that we may properly review them." Exhibit 23. The call was set for July 26, 2023. Exhibit 24.

The Accused HLS Standard for the Accused Websites

76. Upon information and belief, the HLS standard accused in the March 17th letter and relied on in the July 7th claim charts was developed by Apple, Inc. ("Apple") in this District.

77. Further, upon information and belief, Apple has a principal place of business in Cupertino, California, where relevant HLS standard documents and employees with relevant knowledge of the HLS standard are located.

78. For example, upon information and belief, author of the HLS standard, Roger Pantos, is located in this District.[2] *See* https://www.crunchbase.com/person/roger-pantos.

79. Upon information and belief, the HLS standard accused in the March 17th letter and relied on in the July 7th claim charts was published by the IETF, located in Freemont, California, in this District. *See* https://datatracker.ietf.org/doc/html/rfc8216; https://trustee.ietf.org/about/; https://www.ietf.org/contact/.

80. Thus, third party individuals with relevant knowledge as well as documents and other information relevant to this Action are located in this District.

//

---

[2] Upon information and belief, relevant documentation and relevant employees with knowledge of potential prior art systems Apple QuickTime and Adobe Flash Player also are located in this District.

81. Further, Aylo offers its streaming services for the Accused Websites in this District and nearly one million users in the District visit the Accused Websites per day.

82. And, for Apple iPhone or iPad users who access Accused Websites via such mobile devices, Apple's player code would be implemented on those mobile devices when videos are played in full-screen mode.

83. Upon information and belief, relevant documents and third party individuals with relevant knowledge of Apple's mobile player code also are located in this District.

Plaintiff Aylo Freesites' Initial Complaint

84. On July 25, 2023, Plaintiff Aylo Freesites (f/k/a/ MG Freesites Ltd) filed the instant action seeking a declaratory judgment of non-infringement and setting forth some of the reasons that at least the Accused Website Pornhub that implements the HLS standard has not and does not infringe the '555 Patent, the '156 Patent, and the '138 Patent (the three patents for which claim charts were provided).

85. On July 26, 2023, counsel for Aylo sent DISH Network's counsel an email with a courtesy copy of the filed complaint and asked if DISH Network wanted to proceed with the scheduled call and, if so, which outside counsel should also receive an invite. Exhibit 25.

86. DISH Network's counsel responded that they wished to proceed with the call and that outside counsel Hopkins Guy from Baker Botts should receive an invite. *Id.*

87. G. Hopkins Guy, III of Baker Botts is located in Palo Alto, California. https://www.bakerbotts.com/people/g/guy-g-hopkins; *see also* D.I. 18-1.

88. On July 26, 2023, the call was held with Mr. Guy of Baker Botts' Palo Alto office in attendance as the only outside counsel for DISH Network.

Defendants' Second-Filed Utah Complaint

89. On August 22, 2023, Defendants sued "MG Premium Ltd," "MG Billing Ltd," and "MG Billing Ireland Ltd" for infringement of the '772 Patent, the '564 Patent, the '554 Patent, the '680 Patent, the '798 Patent, and the '138 Patent. *See DISH Technologies L.L.C and Sling TV L.L.C. v. MG Premium Ltd, MG Billing Ltd and MG Billing Ireland Ltd, Sonesta Technologies, s.r.o.,*

*Sonesta Media, s.r.o., and Yellow Productions, s.r.o.*, No. 2:23-cv-00552 (D. Utah).[3] The entities "MG Billing Ltd" and "MG Billing Ireland Ltd" do not exist.

Defendants' Prior District Court Patent Enforcement Campaign

90. In addition to Defendants' prior litigation in this District against Jadoo asserting the '564 Patent and other patents related to the Asserted Patents (*see* Paragraphs 23-34 above), Defendants have also previously filed lawsuits in various other district courts to enforce five of the Asserted Patents: the '555 Patent, the '156 Patent, the '564 Patent, the '554 Patent, and the '680 Patent, as well as other related patents. Defendants' sued Delaware Corporation ICON Health & Fitness, Inc. in the District of Delaware, Delaware corporation lululemon athletica Inc. in the District of Delaware, Delaware corporation Peloton Interactive, Inc. in the Eastern District of Texas, and Delaware Corporation Univision Communications Inc. in the District of Delaware. *See DISH Technologies L.L.C and Sling TV L.L.C. v. ICON Health & Fitness, Inc.*, No. 1:21-cv-00531-GBW (D. Del.) (asserting claim 10 of the '555 Patent, claim 1 the '156 Patent, claim 8 of the '564 Patent, claim 16 of the '554 Patent, and claim 14 of the '680 Patent); *DISH Technologies L.L.C and Sling TV L.L.C. v. Lululemon Athletica Inc. et al*, No. 1:21-cv-00532-GBW (D. Del.) (same); *DISH Technologies L.L.C and Sling TV L.L.C. v. Peloton Interactive, Inc.*, No. 2-21-cv-00132-RJG (E.D. Tex.) (same); *see also DISH Technologies L.L.C. and Sling TV L.L.C. v. Univision Communications Inc.*, No. 1:19-cv-00144-LPS (D. Del.) (asserting the '564 Patent and family member Patent Nos. 7,818,444; 8,402,156; and 9,071,668) ("Univision Litigation").

91. Upon information and belief, Defendants settled at least the District of Delaware litigations with Peloton and lululemon via an agreement governed by the laws of the State of Delaware. *See* https://www.law360.com/articles/1604881/peloton-will-pay-dish-75m-to-avoid-import-ban; https://www.law360.com/articles/1604881/attachments/3.

//

---

[3] Defendants' allege in the Utah complaint that Sonesta Technologies, s.r.o. operates BangBros.com and that Yellow Production s.r.o. operates FakeTaxi.com and FakeHub.com.

92. In each of the prior litigations, Baker Botts, including Hopkins Guy from the Palo Alto office of Baker Botts, was counsel for Defendants and litigated in various jurisdictions including this District, Delaware, and Texas.

93. Notably, Defendants sued Icon Health & Fitness, Inc., a company with its principal place of business in Utah, in the District of Delaware, approximately 2,000 miles away from Utah and approximately 1,700 miles away from Defendants' principal place of business in Colorado. *See* https://company.ifit.com/en/contact/; *DISH Technologies L.L.C and Sling TV L.L.C. v. ICON Health & Fitness, Inc.*, No. 1:21-cv-00531-GBW (D. Del.) (asserting five of the eight Asserted Patents).[4]

<u>The ITC Investigation Asserting Five of the Asserted Patents</u>

94. Defendants and DISH DBS Corporation have also filed an ITC investigation. *Certain Fitness Devices, Streaming Components Thereof, and Systems Containing Same*, Inv. No. 337-TA-1265 (ITC) (asserting claims 10, 11-17, 26, and 27 of the '555 Patent; claims 1-12 of the '156 Patent, claims 1, 3-7, 8, 10, 13-15 of the '564 Patent; claims 16-15 and 30 of the '554 Patent; and claims 14-16, 18-21, 28 and 20 of the '680 Patent).[5]

95. In the ITC complaint, Defendants listed the Jadoo Litigation "against Jadoo TV, Inc. in the United States District Court for the Northern District of California alleging infringement" of

---

[4] In the above referenced cases, Defendants sued Univision in Delaware (200 miles away from Univision's principal place of business in New York and 1,700 miles away from Defendants' principal place of business in Englewood, Colorado); sued Peloton in Texas (2,000 miles away from Peloton's principal place of business in New York (https://support.onepeloton.com/hc/en-us/p/contact-us) and 800 miles away from Defendants' place of business in Englewood, Colorado); and sued Lululemon in Delaware (3,000 miles away from Lululemon's principal place of business in Vancouver (https://info.lululemon.com/contact/) and 1,700 miles away from Defendants' principal place of business in Englewood, Colorado).

[5] The '680 Patent was dropped from the Investigation prior to trial.

the ’564 Patent and other patents related to the Asserted Patents under the “Related Litigation” section and as “currently pending” at the time of the ITC complaint. *Id.* Doc. ID 739751 (Complaint) at 68. Defendants similarly listed the Univision Litigation “against Univision Communications Inc. in the United States District Court for the District of Delaware alleging infringement” of the ’564 Patent and other patents related to the Asserted Patents under the “Related Litigation” section. *Id.*

96. Again, Baker Botts, including Palo Alto attorney Hopkins Guy, litigated this matter through trial and final initial determination.

97. Certain Respondents in that investigation have appealed the ITC’s determination to the Federal Circuit, and that appeal is pending. *See iFIT Inc. (f/k/a ICON Health & Fitness, Inc.), FreeMotion Fitness, Inc., and NordicTrack, Inc. v. ITC and DISH DBS Corporation, DISH Technologies L.L.C., and Sling TV L.L.C.*, No. 2023-1965.

98. Baker Botts, including Palo Alto attorney Hopkins Guy, is representing Defendants in the appeal. *Id.*, D.I. 8.

99. As noted above in Paragraph 67, DISH Network’s counsel encouraged “MindGeek” to review materials from this ITC Investigation “because the Commission found that products using HLS and/or MPEG-DASH infringe certain claims of those patents.” Exhibit 19.

<u>Defendants’ Continuing Enforcement Campaign</u>

100. On September 1, 2023 Defendants sued iFIT, which has a principal place of business in Utah, again in Delaware, and this time asserting infringement of the ’138 Patent and the ’798 Patent. *See DISH Technologies LLC et al v. IFIT Health & Fitness, Inc. f/k/a ICON Health & Fitness, Inc.*, No. 1:23-cv-00963 (D. Del.), D.I. 1. In their complaint, Defendants note that the ’138 Patent and the ’798 Patent “are continuations or continuations-in-part of the same original parent application” as the other patents previously asserted against iFIT. *Id.* at ¶ 27. Defendants further state that iFIT, as “a party to prior ITC proceedings involving patents stemming from the same original parent application” knew or should have known about the issuance of the ’138 Patent (*id.* at ¶51), and that iFIT had knowledge of U.S. Patent Application No. 17,962,231 that issued as the ’798 Patent (*id.* at ¶ 69).

The ’555 Patent

101. The ’555 Patent issued on November 5, 2019, and is entitled “Apparatus, System, and Method for Multi-Bitrate Content Streaming.” Exhibit 1.

102. Asserted claim 10 of the ’555 Patent is reproduced below.

> 10. A content player device to stream a video over a network from a server for playback of the video, the content player device comprising:
>
> a processor;
>
> a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:
>
> establish one or more network connections between the client module and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;
>
> wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, wherein each of the low quality stream, the medium quality stream, and the high quality stream comprises a streamlet that encodes the same portion of the video at a different one of the plurality of different bitrates;
>
> wherein at least one of the low quality stream, medium quality stream, and high quality stream is encoded at a bit rate of no less than 600 kbps; and
>
> wherein the streamlet encoding the same portion of the video in the low quality stream has an equal playback

duration as the streamlet encoding the same portion of the video in the high quality stream;

select a specific one of the streams based upon a determination by the client module to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the selected stream;

receive the requested streamlets from the server via the one or more network connections; and

provide the received streamlets for playback of the video.

<u>The ’156 Patent</u>

103. The ’156 Patent issued on August 25, 2020, and is entitled “Apparatus, System, and Method for Adaptive-Bitrate Shifting of Streaming Content.” Exhibit 2.

104. Asserted claim 1 of the ’156 Patent is reproduced below.

1. An apparatus for rendering a video that is adaptively received as a digital stream from a video server over a network, the apparatus comprising;

a media player operating on the apparatus, wherein the media player is configured to stream the video from the video server via at least one transmission control protocol (TCP) connection over the network, wherein the video server stores multiple different copies of the video encoded at different bit rates as multiple sets of streamlets, wherein each of the streamlets yields a different portion of the video on playback, wherein the streamlets across the different copies yield the same portions of the video on playback, and wherein the streamlets in the different copies are aligned in time such that the streamlets that

play back the same portion of the video for the different copies each begin at the same playback time in relation to the beginning of the video, and wherein the media player streams the video by:

requesting sequential streamlets of one of the copies from the video server according to the playback times of the streamlets by transmitting hypertext transport protocol (HTTP) GET requests that identify the selected streamlets stored by the video server, wherein the sequential streamlets are selected by the media player from the based upon successive determinations to shift the playback quality to a higher or lower quality one of the different copies of the video;

repeatedly generating, by the media player, a factor relating to the performance of the network that is indicative of an ability to sustain the streaming of the video;

adapting the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the streamlets of the highest quality copy of the video that is determined to be sustainable at that time; and

presenting the video for playback by providing the requested streamlets in order of ascending start time.

The ’138 Patent

105. The ’138 Patent issued on October 11, 2022, and is entitled “Apparatus, System, and Method for Multi-Bitrate Content Streaming.” Exhibit 3.

106. Asserted claim 14 of the ’138 Patent is reproduced below.

14. An end user station to stream a video over a network from a server for playback of the video, the end user station comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish an internet connection between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and

wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the internet connection for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the internet connection; and

provide the received first streamlet for playback of the video.

The ’554 Patent

107. The ’554 Patent issued on November 5, 2019, and is entitled “Apparatus, System, and Method for Multi-Bitrate Content Streaming.” Exhibit 4.

108. Asserted claim 16 of the ’554 Patent is reproduced below.

16. An end user station to stream a live event video over a network from a server for playback of the video, the content player device comprising:

a processor;

a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to:

establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets;

wherein the live event video is encoded at a plurality of different bitrates to create a plurality of streams including at least a low quality stream, a medium quality stream, and a high quality stream, each of the low quality stream, the medium quality stream, and the high quality stream comprising a group of streamlets encoded at the same respective one of the different

bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the live event video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bit rate of no less than 600 kbps; and

wherein the first streamlets of each of the low quality stream, the medium quality stream and the high quality stream each has an equal playback duration and each of the first streamlets encodes the same portion of the live event video at a different one of the different bitrates;

select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams;

place a streamlet request to the server over the one or more network connections for the first streamlet of the selected stream;

receive the requested first streamlet from the server via the one or more network connections; and

provide the received first streamlet for playback of the live event video.

<u>The ’798 Patent</u>

109. The ’798 Patent issued on June 13, 2021, and is entitled “Apparatus, System, and Method for Multi-Bitrate Content Streaming.” Exhibit 5.

110. Asserted claim 1 of the ’798 Patent is reproduced below.

1. A system for adaptive-rate content streaming of digital content

playable on one or more end user stations over the Internet, the system comprising:

at least one storage device storing digital content, the digital content encoded at a plurality of different bit rates creating a plurality of streams including a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein the first bit rate stream, the second bit rate stream, and the third bit rate stream each comprise a group of streamlets encoded at a respective one of the plurality of different bit rates, each group of streamlets comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content;

wherein at least one of the first bit rate stream, the second bit rate stream, and the third bit rate stream is encoded at a bit rate of no less than 600 kbps; and

wherein the first streamlet of each of the groups of streamlets has the same first duration and encodes the same first temporal portion of the digital content in each of the first bit rate stream, the second bit rate stream, and the third bit rate stream, and wherein the first streamlet of the first bit rate stream encodes the same first temporal portion of the digital content at a different bit rate than the first streamlet of the second bit rate stream and the first streamlet of the third bit rate stream.

The ’564 Patent

111. The ’564 Patent issued on August 2, 2016, and is entitled “Apparatus, System, and Method for Adaptive-Rate Shifting of Streaming Content.” Exhibit 6.

112. Asserted claim 8 of the ’564 Patent is reproduced below.

> 8. A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;
>
> streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:
>
> requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;
>
> automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of

the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and

making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and

presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

<u>The ’680 Patent</u>

113. The ’680 Patent issued on March 16, 2021, and is entitled “Apparatus, System, and Method for Multi-Bitrate Content Streaming.” Exhibit 7.

114. Asserted claim 22 of the ’680 Patent is reproduced below.

22. A process executable by one or more servers to stream a video for playback by one or more end user stations, the process comprising:

storing, by the one or more servers, one or more virtual timelines corresponding to a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream, wherein the low quality stream, the medium

quality stream, and the high quality stream each comprise a group of streamlets encoded at a respective one of a plurality of different bitrates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the video;

wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and wherein the first streamlet of each of the groups of streamlets has the same first duration and encodes the same first portion of the video in the low quality stream, the medium quality stream, and the high quality stream, the first streamlet of the low quality stream having a different one of the different bitrates than the first streamlet of the high quality stream and the first streamlet of the medium quality stream;

receiving at least one virtual timeline request over one or more internet connections from the one or more end user stations to retrieve a virtual timeline correspond to the first streamlet storing the first portion of the video,

wherein the at least one streamlet request from the one or more end user stations includes a request for a currently selected first streamlet from one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the video;

retrieving from the storage device the requested virtual timeline for the currently selected one of the low quality stream, the medium quality stream, and the high quality stream; and

sending the retrieved virtual timeline to the requesting one of the end user stations over the one or more network connections.

The ’772 Patent

115. The ’772 Patent issued on October 21, 2014, and is entitled “Apparatus, System, and Method for Adaptive-Rate Shifting of Streaming Content.” Exhibit 8.

116. Asserted claim 1 of the ’772 Patent is reproduced below.

1. A method for presenting rate-adaptive streams, the method comprising:

streaming by a media player operating on an end user station a video from a set of one or more servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on the set of servers, wherein each of the multiple files yields a different portion of the video on playback, wherein the multiple files across the different copies yield the same portions of the video on playback, each of said files having a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;

automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion

one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, said automatically requesting including,

repeatedly generating a set of one or more factors indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the set of one or more factors relate to the performance of the network; and

making the successive determinations to shift the playback quality based on at least one of the set of factors to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time; and

presenting the video by playing back with the media player on the end user station the requested files in order of ascending playback time.

**<u>COUNT I</u>**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’555 PATENT)**

117. Aylo repeats and re-alleges the allegations in Paragraphs 1-116 as though fully set forth here in their entirety.

118. By virtue of DISH Network’s claim chart asserting infringement based on streaming with the HLS standard, and Defendants’ litigation history involving the ’555 Patent and related patents, an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 10 of the ’555 Patent.

119. A valid and justiciable controversy thus has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

120. Specifically, in its July 7, 2023 letter, DISH Network provided a claim chart contending

that an exemplary Accused Website (Pornhub) infringes claim 10 of the ’555 Patent. Exhibits 9 and 10.

121. The claim chart accused “exemplary aspects of Pornhub streaming services and products” and cited repeatedly to the RFC 8216 of the HLS standard. Exhibit 10.

122. In a prior letter, DISH Network directed “MindGeek” to review its recent success at the ITC. Exhibit 19.

123. As discussed in Paragraph 94, Defendants have asserted claim 10 of the ’555 Patent at the ITC.

124. As discussed in Paragraph 90, Defendants have also asserted claim 10 of the ’555 Patent in the District of Delaware and in the Eastern District of Texas.

125. Aylo has not infringed and does not infringe at least claim 10 of the ’555 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

126. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 10 of the ’555 Patent: “place a streamlet request to the server over the one or more network connections for the selected stream,” “receive the requested streamlets from the server via the one or more network connections,” and “provide the received streamlets for playback of the video.”

127. For example, the Accused Websites do not request multiple streamlets in a single request.

128. Additionally, and by way of further example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 10 of the ’555 Patent: “[a] content player device to stream a video over a network from a server for playback of the video, the content player device comprising: a processor; a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to, . . .”

129. For example, the Accused Websites does not include a “content player device” with “processor” and “digital processing apparatus memory device” because the Accused Websites are

websites and Aylo does not provide such hardware to end users.

**COUNT II**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’156 PATENT)**

130. Aylo repeats and re-alleges the allegations in Paragraphs 1-129 as though fully set forth here in their entirety.

131. By virtue of DISH Network’s claim chart asserting infringement based on streaming with the HLS standard, and Defendants’ litigation history involving the ’156 Patent and related patents, an actual controversy exists between Aylo and Defendants as to whether Aylo infringe claim 1 of the ’156 Patent.

132. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

133. Specifically, in its July 7, 2023 letter, DISH Network provided a claim chart contending that an exemplary Accused Website (Pornhub) infringes claim 1 of the ’156 Patent. Exhibits 9 and 11.

134. The claim chart accused “exemplary aspects of Pornhub streaming services and products” and repeatedly cited to the RFC 8216 of the HLS standard. Exhibit 11.

135. In a prior letter, DISH Network directed “MindGeek” to review its recent success at the ITC. Exhibit 19.

136. As discussed in Paragraph 94, Defendants have asserted claim 1 of the ’156 Patent at the ITC.

137. As discussed in Paragraph 90, Defendants have also asserted claim 1 of the ’156 Patent in the District of Delaware and in the Eastern District of Texas.

138. Aylo has not infringed and does not infringe at least claim 1 of the ’156 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

139. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 1 of the ’156 Patent: “[a]n apparatus for rendering a video that is adaptively received as a digital stream from a video server over a network,” “a media player

. . . configured to stream the video from the video server via at least one transmission control protocol (TCP) connection," "wherein the video server stores multiple different copies of the video encoded at different bit rates as multiple sets of streamlets," and "requesting sequential streamlets of one of the copies from the video server according to the playback times of the streamlets by transmitting hypertext transport protocol (HTTP) GET requests that identify the selected streamlets stored by the video server."

140. For example, Aylo does not have a single server performing each limitation of claim 1, including the above limitations. *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023) ("while the claim term 'a microprocessor' does not require there be only one microprocessor, the subsequent limitations referring back to 'said microprocessor' require that at least one microprocessor be capable of performing each of the claimed functions.").

141. Further, and by way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 1 of the '156 Patent: "requesting sequential streamlets of one of the copies from the video server according to the playback times . . . that identify the selected streamlets stored by the video server, wherein the sequential streamlets are selected by the media player from the based upon successive determinations to shift the playback quality to a higher or lower quality one of the different copies of the video."

142. For instance, the Accused Websites do not request multiple streamlets in a single request.

**COUNT III**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '138 PATENT)**

143. Aylo repeats and re-alleges the allegations in Paragraphs 1-142 as though fully set forth here in their entirety.

144. By virtue of DISH Networks' claim chart asserting infringement of claim 14 of the '138 Patent based on streaming with the HLS standard, and Defendants' litigation history involving the family members of the '138 Patent, an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 14 of the '138 Patent.

145. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

146. Specifically, in its July 7, 2023 letter, DISH Network provided a claim chart contending that an exemplary Accused Website (Pornhub) infringes claim 14 of the ’138 Patent. Exhibits 9 and 12.

147. The claim chart accused “exemplary aspects of Pornhub streaming services and products” and cited repeatedly to the RFC 8216 of the HLS standard. Exhibit 12.

148. In a prior letter, DISH Network directed MindGeek to review its recent success at the ITC asserting family members of the ’138 Patent. Exhibit 19.

149. Aylo has not infringed and does not infringe at least claim 14 of the ’138 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

150. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 14 of the ’138 Patent: “[a]n end user station to stream a video over a network from a server for playback of the video, the end user station comprising: a processor; a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to, . . . select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams.”

151. For example, the Accused Websites do not include an “end user station” with “processor” and “digital processing apparatus memory device” because the Accused Websites are websites and Aylo does not provide such hardware to end users.

## COUNT IV

## (DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’554 PATENT)

152. Aylo repeats and re-alleges the allegations in Paragraphs 1-151 as though fully set forth here in their entirety.

153. By virtue of DISH Network’s March 17, 2023 letter sent to “MindGeek Montreal” asserting infringement based on streaming with the HLS standard and Defendants’ litigation history involving the ’554 Patent (including asserting claim 16 of the ’554 Patent), an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 16 of the ’554

Patent.

154. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

155. Specifically, in its March 17, 2023 letter, DISH Network stated that it "owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology," which includes the '554 Patent and that "the streaming technology that MindGeek uses . . . appears to be covered by, **for example**, claim 1 of the '156 Patent." Exhibit 19 at 1 (emphasis added).

156. In its July 7, 2023 letter, DISH Network provided "exemplary claim charts showing how three of DISH's ABR patents read on MindGeek's streaming services." Exhibits 9-12.

157. In a prior letter, DISH Network directed MindGeek to review materials from Defendants' and DISH DBS Corporation's ITC investigation (Exhibit 19) asserting the '554 Patent (including claim 16 of the '554 Patent) (*see* Paragraph 94).

158. And, as discussed in Paragraph 90, Defendants have also asserted the '554 Patent against multiple defendants (who allegedly use the same HLS standard) in the District of Delaware and Eastern District of Texas.

159. Aylo has not infringed and does not infringe at least claim 16 of the '554 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

160. Further, and by way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 16 of the '554 Patent: "[a]n end user station to stream a live event video over a network from a server for playback of the video, the content player device comprising: a processor a digital processing apparatus memory device comprising non-transitory machine-readable instructions that, when executed, cause the processor to . . . select a specific one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the streams."

161. For example, the Accused Websites do not include an "end user station" with a "processor" and "digital processing apparatus memory device" because the Accused Websites are

websites and Aylo does not provide such hardware to end users.

162. Further, and by way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 16 of the ’554 Patent: “establish one or more network connections between the end user station and the server, wherein the server is configured to access at least one of a plurality of groups of streamlets.”

163. For example, Aylo does not have a single server performing each limitation of claim 16, including the above limitations. *Salazar*, 64 F.4th at 1317 (“while the claim term ‘a microprocessor’ does not require there be only one microprocessor, the subsequent limitations referring back to ‘said microprocessor’ require that at least one microprocessor be capable of performing each of the claimed functions.”).

## COUNT V

## (DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’798 PATENT)

164. Aylo repeats and re-alleges the allegations in Paragraphs 1-163 as though fully set forth here in their entirety.

165. By virtue of DISH Network’s March 17, 2023 letter sent to “MindGeek Montreal” asserting infringement based on streaming with the HLS standard, the significant overlap and similarities between the claims of the ’798 Patent and the claims of the ’138 Patent (for which Defendants provided an exemplary infringement claim chart), as well as Defendants’ litigation history asserting patents in the same family as the ’798 Patent, an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 1 of the ’798 Patent.

166. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

167. Specifically, in its March 17, 2023 letter, DISH Network stated that it “owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology,” which includes Application No. 17/962,231 (which issued as the ’798 Patent) and directed MindGeek to an “enclosed list of U.S. and international patents and patent applications” and stated that “the streaming technology that MindGeek uses . . . appears to be covered by, **for example**, claim 1 of the ’156 Patent.” Exhibit 19 at 1 (emphasis added); Exhibit 20.

168. In its July 7, 2023 letter, DISH Network provided "exemplary claim charts showing how three of DISH's ABR patents read on MindGeek's streaming services" including an exemplary claim chart for the '138 Patent (Exhibit 12), for which the '798 Patent is a continuation with significant overlap in claim limitations. Exhibit 9; Exhibit 5 at Cover; *compare* Exhibit 3 at claims 1, 14, and 23 *with* Exhibit 5 at claims 1, 11, and 22.

169. Aylo has not infringed and does not infringe at least claim 1 of the '798 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

170. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 1 of the '798 Patent: "[a] system for adaptive-rate content streaming of digital content playable on one or more end user stations over the Internet, the system comprising: at least one storage device storing digital content, the digital content encoded at a plurality of different bit rates creating a plurality of streams including a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein the first bit rate stream, the second bit rate stream, and the third bit rate stream each comprise a group of streamlets encoded at a respective one of the plurality of different bit rates, each group of streamlets comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content."

171. For example, the Accused Websites do not include an "end user station" with a "storage device" and because the Accused Websites are websites and Aylo does not provide such hardware to end users.

172. Additionally, and by way of example only, Defendants cannot show that Aylo "stor[es] . . . a group of streamlets."

**COUNT VI**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '564 PATENT)**

173. Aylo repeats and re-alleges the allegations in Paragraphs 1-172 as though fully set forth here in their entirety.

174. By virtue of DISH Network's March 17, 2023 letter sent to "MindGeek Montreal" asserting infringement based on streaming with the HLS standard, Defendants' litigation history

involving the ’564 Patent (including asserting claim 8 of the ’564 Patent against Jadoo in this District), and the significant overlap and similarities between the claims for the ’564 Patent and the ’156 Patent (for which Defendants have provided an exemplary infringement chart), an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 8 of the ’564 Patent.

175. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

176. Specifically, in its March 17, 2023 letter, DISH Network stated that it “owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology,” which includes the ’564 Patent and directed MindGeek to an “enclosed list of U.S. and international patents and patent applications” and stated that “the streaming technology that MindGeek uses . . . appears to be covered by, **for example**, claim 1 of the ’156 Patent.” Exhibit 19 at 1 (emphasis added); Exhibit 20.

177. In its July 7, 2023 letter, DISH Network provided “exemplary claim charts showing how three of DISH’s ABR patents read on MindGeek’s streaming services” including an exemplary claim chart for the ’156 Patent—a continuation of the ’564 Patent with significant overlap in claim limitations. Exhibit 9; Exhibit 2 at 2; *compare* Exhibit 2 at claims 1 and 13 *with* Exhibit 6 at claims 1 and 8.

178. As explained in Paragraphs 23-34, Defendants filed a complaint asserting the ’564 Patent and other patents related to the Asserted Patents in this District against Jadoo. *DISH Technologies L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc.*, No. 5:18-cv-05214-EJD (N.D. Cal.), D.I. 1.

179. As discussed in Paragraph 90, Defendants have also asserted the ’564 Patent against multiple defendants (who allegedly use the same HLS standard) in the District of Delaware and Eastern District of Texas. Defendants also directed MindGeek to review materials from Defendants and DISH DBS Corporation’s ITC investigation (Exhibit 19) asserting the ’564 Patent (including claim 8 of the ’564 Patent). *Certain Fitness Devices, Streaming Components Thereof, and Systems Containing Same*, Inv. No. 337-TA-1265 (ITC).

180. Aylo has not infringed and does not infringe at least claim 8 of the ’564 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

181. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 8 of the ’564 Patent: “requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;” “automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies,” “presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.”

182. For example, the Accused Websites do not request multiple streamlets in a single request.

183. Further, and by way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 8 of the ’564 Patent: “[a] method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network,” “streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network,” “wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server,” “automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network.”

184. For example, Aylo does not have a single server performing each limitation of claim 8, including the above limitations. *Salazar*, 64 F.4th at 1317 (“while the claim term ‘a microprocessor’

does not require there be only one microprocessor, the subsequent limitations referring back to 'said microprocessor' require that at least one microprocessor be capable of performing each of the claimed functions.").

**COUNT VII**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '680 PATENT)**

185. Aylo repeats and re-alleges the allegations in Paragraphs 1-184 as though fully set forth here in their entirety.

186. By virtue of DISH Network's March 17, 2023 letter sent to "MindGeek Montreal" asserting infringement based on streaming with the HLS standard, and Defendants' litigation history involving the '680 Patent, an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 22 of the '680 Patent.

187. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

188. Specifically, in its March 17, 2023 letter, DISH Network stated that it "owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology," which includes the '680 Patent and directed MindGeek to an "enclosed list of U.S. and international patents and patent applications" and stated that "the streaming technology that MindGeek uses . . . appears to be covered by, **for example**, claim 1 of the '156 Patent." Exhibit 19 at 1 (emphasis added); Exhibit 20.

189. In its July 7, 2023 letter, DISH Network provided "exemplary claim charts showing how three of DISH's ABR patents read on MindGeek's streaming services." Exhibits 9-12.

190. As discussed in Paragraph 90, Defendants have asserted the '680 Patent against multiple defendants (who allegedly use the same HLS standard) in the District of Delaware and Eastern District of Texas.

191. And Defendants also directed MindGeek to review materials from Defendants and DISH DBS Corporation's ITC investigation (Exhibit 19) asserting the '680 Patent. Paragraph 94, *supra*.

192. Aylo has not infringed and does not infringe at least claim 22 of the '680 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making,

use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

193. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 22 of the ’680 Patent: “Storing, by the one or more servers, one or more virtual timelines,” “receiving at least one virtual timeline request over one or more internet connections from the one or more end user stations to retrieve a virtual timeline correspond to the first streamlet storing the first portion of the video,” “retrieving from the storage device the requested virtual timeline for the currently selected one of the low quality stream, the medium quality stream, and the high quality stream;” “sending the retrieved virtual timeline to the requesting one of the end user stations over the one or more network connections.”

194. For example, the Accused Websites do not store one or more virtual timelines.

195. Further, and by way of example only, Defendants cannot show that the Accused Websites practice all of the claimed steps of the method within the United States.

**COUNT VIII**

**(DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE ’772 PATENT)**

196. Aylo repeats and re-alleges the allegations in Paragraphs 1-195 as though fully set forth here in their entirety.

197. By virtue of DISH Network’s March 17, 2023 letter sent to “MindGeek Montreal” asserting infringement based on streaming with the HLS standard, Defendants’ litigation history asserting family members of the ’772 Patent, and the significant overlap and similarities between the claims for the ’772 Patent and the ’156 Patent (for which Defendants have provided an exemplary infringement chart), an actual controversy exists between Aylo and Defendants as to whether Aylo infringes claim 1 of the ’772 Patent.

198. A valid and justiciable controversy has arisen and exists between Aylo and Defendants within the meaning of 28 U.S.C. § 2201.

199. Specifically, in its March 17, 2023 letter, DISH Network stated that it “owns a portfolio of patent assets directed to adjustable bit-rate video streaming technology,” which includes the ’772 Patent, directed MindGeek to an “enclosed list of U.S. and international patents and patent applications,” and stated that “the streaming technology that MindGeek uses . . . appears to be

covered by, **for example**, claim 1 of the '156 Patent." Exhibit 19 at 1 (emphasis added); Exhibit 20.

200. In its July 7, 2023 letter, DISH Network sent "exemplary claim charts showing how three of DISH's ABR patents read on MindGeek's streaming services" including an exemplary claim chart for the '156 Patent (Exhibit 11)—a continuation of the '772 Patent with significant overlap in claim limitations. Exhibit 9; Exhibit 2 at 2; *compare* Exhibit 2 at claims 1 and 13 *with* Exhibit 8 at claim 1.

201. As discussed in Paragraph 90-94, Defendants have also asserted child Patents of the '772 Patent against multiple defendants (who allegedly use the same HLS standard) in the District of Delaware and Eastern District of Texas as well as at the ITC.

202. Aylo has not infringed and does not infringe at least claim 1 of the '772 Patent, either directly or indirectly, literally or under the doctrine of equivalents, including through their making, use, sale, or offer for sale in, or importation into the United States of at least the Accused Websites.

203. By way of example only, Defendants cannot show that the Accused Websites practice at least the following limitations of claim 1 of the '772 Patent: "requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;" "automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies" "sending the retrieved virtual timeline to the requesting one of the end user stations over the one or more network connections"

204. For example, the Accused Websites do not request multiple streamlets in a single request.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Aylo demands a jury trial on all issues and claims so triable.

## REQUEST FOR RELIEF

WHEREFORE, Aylo respectfully requests that the Court enter judgment in its favor and against Defendants and grant the following relief:

A. A declaration that the Accused Websites do not infringe, either directly or indirectly, under 35 U.S.C. § 271 (or any sub-section thereof) claim 10 of the ’555 Patent, claim 1 of the ’156 Patent, claim 14 of the ’138 Patent, claim 16 of the ’554 Patent, claim 1 of the ’798 Patent, claim 8 of the ’564 Patent, claim 22 of the ’680 Patent, and claim 1 of the ’772 Patent either literally or under the doctrine of equivalents;

B. A declaration that Aylo has not infringed and does not infringe, either directly or indirectly, under 35 U.S.C. § 271 (or any sub-section thereof) the above claims, either literally or under the doctrine of equivalents, based on Aylo’s purported making, having made, using, offering for sale, selling, and/or importing of the Accused Websites;

C. That this case be found exceptional within the meaning of 35 U.S.C. § 285;

D. An award of costs, expenses, and reasonable attorneys’ fees incurred in connection with this action; and

E. Such other and further relief as the Court deems just and proper.

VENABLE LLP

Dated: September 6, 2023

By: /s/ *William A. Hector*

William A. Hector (SBN 298490)
Frank M. Gasparo (*Pro Hac Vice*)
Ralph A. Dengler (*Pro Hac Vice*)
Ian G. Paquette (*Pro Hac Vice*)
Parker G. Zimmerman (*Pro Hac Vice*)

*Attorneys for Plaintiffs*