**BAKER BOTTS L.L.P.**
G. Hopkins Guy, III (SBN 124811)
hop.guy@bakerbotts.com
Hien "David" Lien (SBN 313754)
david.lien@bakerbotts.com
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: 650.739.7500
Facsimile: 650.739.7699

Ali Dhanani (*pro hac vice*)
ali.dhanani@bakerbotts.com
Thomas B. Carter, Jr. (*pro hac vice*)
thomas.carter@bakerbotts.com
Zacharias E. Shepard (*pro hac vice*)
zach.shepard@bakerbotts.com
910 Louisiana
Houston, Texas 77002
Telephone: 713.229.1108
Facsimile: 713.229.2808

Kurt M. Pankratz *(pro hac vice)*
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: 214.953.6584
Facsimile: 214.661.4584

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MG Freesites LTD,<br><br>            Plaintiff,<br><br>    **v.**<br><br>DISH Technologies L.L.C and Sling TV L.L.C.,<br><br>            Defendants. | Case No.: 3:23-cv-03674-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing:   November 16, 2023<br>Time:    1:30 p.m.<br>Judge:    Hon. Edward M. Chen<br>Courtroom: 5, 17th Floor |

## NOTICE OF MOTION AND MOTION

Defendants DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") hereby gives notice that on November 16, 2023 at 1:30 p.m. in Courtroom 5, Seventeenth Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as soon thereafter as counsel may be heard, a hearing will be held by the Honorable Edward Chen, United States District Judge, on DISH's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Transfer.

## STATEMENT OF RELIEF SOUGHT

DISH requests that the Court dismiss Plaintiffs MG Freesites Ltd (n/k/a Aylo Freesites Ltd) ("MG Freesites"), Aylo Premium Ltd (f/k/a/ MG Premium Ltd) ("MG Premium"), and Aylo Billing Limited (f/k/a MG Billing Limited) ("MG Billing") (collectively, "Plaintiffs") First Amended Complaint for Declaratory Judgement of Non-Infringement pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, transfer this action to the District of Utah pursuant to 28 U.S.C. §§ 1631, 1404(a), or the first-to-file rule.[1]

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(2), 28 U.S.C. §§ 1631, 1404(a), the judicially created first-to-file rule, and Local Rules 7-1 and 7-2. This Motion is based on this notice and motion, the following points and authorities, the declaration of G. Hopkins Guy, III in support of this Motion filed herewith, the exhibits attached thereto, reply papers that may be filed, and other such matters as may be brought before the Court prior to or at the hearing on this Motion.

---

[1] In this Motion, DISH alternatively moves to transfer the action to the District of Utah for want of personal jurisdiction. Given that the locus of the present patent dispute, including any relevant public and private interest factors, also favor transfer, DISH also moves to transfer venue under 28 U.S.C. § 1404(a) and to transfer the claims of newly added plaintiffs MG Premium Ltd and MG Billing Limited pursuant to the first-to-file rule.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ...................................................................................................3

    A.    The Parties .................................................................................................3

        1.    Defendants DISH Technologies L.L.C. and Sling TV L.L.C.....................3

        2.    Plaintiff MG Freesites ...........................................................................3

        3.    Plaintiffs MG Premium and MG Billing .....................................................3

    B.    DISH's Pre-Suit Communications Were With a Non-Resident Affiliate of Plaintiffs ..................................................................................................4

    C.    DISH's Earlier-Filed Utah Action Against MG Premium and MG Billing ...........4

    D.    MG Premium and MG Billing's Later-Filed Claims in This Action......................5

    E.    DISH's 2018 Patent Enforcement Action Against Jadoo ........................5

    F.    DISH's Prior ITC Enforcement Action for the ABR Patents ................................6

III.    LEGAL STANDARD ...........................................................................................7

    A.    Dismissal for Lack of Personal Jurisdiction ..........................................7

    B.    Transfer to Cure Want of Jurisdiction ....................................................8

    C.    Transfer for Convenience under § 1404(a) .............................................8

IV.    ARGUMENT ........................................................................................................9

    A.    DISH's Alleged Contacts Cannot Support Specific Personal Jurisdiction.............9

        1.    DISH Did Not "Purposefully Avail" Itself of NDCA ................................9

        2.    The Jadoo Litigation, By Itself, Cannot Confer Jurisdiction ...................10

    B.    Exercising Personal Jurisdiction over DISH Would Violate Traditional Notions of "Fair Play and Substantial Justice".........................................................11

        1.    Factor 1: Burden on Defendant.................................................................11

        2.    Factor 2: State's Interest in Adjudicating the Underlying Dispute............12

        3.    Factor 3: Plaintiffs' Interest in Obtaining Convenient and Effective Relief........................................................................................................13

        4.    Factor 4: The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies ..............................................13

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

5.       Factor 5: Shared Interest of the Several States in Furthering
         Fundamental Substantive Social Policies ....................................................14

C.    Alternatively, the Section 1404(a) Transfer Factors Support Transfer of
      Plaintiffs' Claims Because the Center of Gravity for This Case Lies with
      Utah, and This Dispute Has No Relevant Connection to California. ...................15

      1.       This Case Could Have Been Brought in the District of Utah. ..................15

      2.       Convenience of the Parties and Witnesses Weighs Strongly in Favor of
               Transfer to Utah ...............................................................................15

      3.       The Sources of Proof are Not in California .............................................19

      4.       Other Factors Affecting Ease and Expense of Trial Favor Transfer .........21

D.    Alternatively, the First-To-File Rule Supports Dismissal or Transfer of the
      Utah MG Defendants' Claims. ..............................................................22

      1.       DISH's Utah Action is the First-Filed Action Against the Utah MG
               Defendants and Their Claims Should be Dismissed or Transferred..........23

      2.       "Double Dose of Discretion" Exceptions to the First-to-File Rule ..........24

      3.       The Convenience Factors Under § 1404(a) Support Transfer ..................25

V.    CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
    975 F. Supp. 2d 1083 (N.D. Cal. 2013) .............................................................................11, 12

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995)................................................................................................7

*Alltrade, Inc. v. Uniweld Prods. Inc.*,
    946 F.2d 622 (9th Cir. 1991) .................................................................................................24

*Apple Inc. v. VoIP-Pal.com, Inc.*,
    506 F. Supp. 3d 947 (N.D. Cal. 2020) ..............................................................................11, 12

*Apple Inc. v. Wi-LAN Inc.*,
    No. C 14-2838 CW, 2014 WL 4477362 (N.D. Cal. Sept. 11, 2014)......................................18

*Apple Inc. v. Zipit Wireless, Inc.*,
    30 F.4th 1368 (Fed. Cir. 2022) .............................................................................................8

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*,
    480 U.S. 102 (1987)...............................................................................................................12

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)..............................................................................................10

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
    552 F.3d 1324 (Fed. Cir. 2008)..........................................................................................7, 10

*Ben Chang v. Biosuccess Biotech, Co.*,
    No. 14-CV-00425-LHK, 2014 WL 12703706 (N.D. Cal. May 30, 2014) .............................15

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994)...............................................................................................11

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006)..............................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................................7, 9, 10, 11, 17

*Caruth v. Int'l Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995) ..................................................................................................14

iii

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

*Commc'ns Test Design, Inc. v. Contec, LLC*,
    952 F.3d 1356 (Fed. Cir. 2020)..................................................................23, 24, 25

*Ctr. for Biological Diversity v. Kempthorne*,
    No. C 08-1339 CW, 2008 WL 4543043 (N.D. Cal. Oct. 10, 2008) ...........................8

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ....................................................................................8

*DISH Techns. L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc.*,
    No. 5:18-cv-05214-EJD (N.D. Cal. Aug. 24, 2018), Dkt. 1 ......................................5

*DISH Techns. L.L.C. v. MG Premium Ltd*,
    Case No. 2:23-cv-00552-BSJ, Dkt. 1 (D. Utah Aug. 22, 2023) ..........1, 4, 5, 20, 22, 23, 24, 25

*DISH Techs. L.L.C. v. ICON Health & Fitness, Inc.*,
    No. 1:21-cv-00531 (D. Del. Apr. 13, 2021)............................................................13

*DISH Techs. L.L.C. v. Lululemon Athletica Inc.*,
    No. 1:21-cv-00532 (D. Del. Apr. 13, 2021)............................................................13

*DISH Techs. L.L.C. v. Peloton Interactive*,
    No. 2:21-cv-00132 (E.D. Tex. Apr. 13, 2021).........................................................13

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
    No. 20-CV-04768-LHK, 2021 WL 121130 (N.D. Cal. Jan. 13, 2021) ....................13

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996), *overruled in part on other grounds by Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)........................................................25

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) ..................................................................................19

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
    336 F.R.D. 574 (N.D. Cal. 2020)......................................................................8, 9, 16

*Fleites v. MindGeek S.A.R.L., MG Freesites, Ltd, et al.*,
    Case No. 2:21-CV-4920-CJC-ADS (C.D. Cal.) ..............................................2, 3, 21

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) (discussing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 260–62 (2017)................................................................12

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
    737 F.3d 704 (Fed. Cir. 2013)..................................................................................25

iv

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515
  U.S. 277 (1995) ...........................................................................................................................25

*Gro Master, Inc. v. Farmweld, Inc.*,
  920 F. Supp. 2d 974 (N.D. Iowa 2013) ......................................................................................14

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
  No. C-07-06222 RMW, 2008 WL 1991094 (N.D. Cal. May 5, 2008) ......................................23

*Hanson v. Denckla*,
  357 U.S. 235 (1958) .....................................................................................................................9

*In re DISH*,
  2021 WL 4911981 ..................................................................................................................17, 20

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ......................................................17

*In Re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ..................................................................................................21

*In the Matter of Certain Fitness Devices, Streaming Components Thereof, and Systems Containing
  Same*,
  Inv. No. 337-TA-1265 (Mar. 23, 2023) ........................................................................................2

*Inamed Corp. v. Kuzmak*,
  249 F.3d 1356 (Fed. Cir. 2001) ....................................................................................................7

*International Shoe Co v. Washington*,
  326 U.S. 310 (1945) ............................................................................................................7, 9, 10

*Jane Does 1-9 v. Murphy et al.*,
  Dkt. No. 233-3 ............................................................................................................................22

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ......................................................................................................17

*Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ....................................................................................................................24

*Kulko v. Cali. Superior Court*,
  436 U.S. 84 (1978) .......................................................................................................................9

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  89 F.R.D. 497 (C.D. Cal. 1981) ..................................................................................................17

*Matt v. Baxter Healthcare Corp.*,
  74 F. Supp. 2d 467 (E.D. Pa. 1999) ............................................................................................15

*Merial Ltd. v. Cipla Ltd.*,
    681 F.3d 1283 (Fed. Cir. 2012) ............................................................................................24

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996) ..................................................................................................10

*Ouellette v. True Penny People, LLC*,
    352 F. Supp. 3d 144 (D. Mass. 2018) .................................................................................10

*Park v. Dole Fresh Vegetables, Inc.*,
    964 F. Supp. 2d 1088 (N.D. Cal. 2013) .................................................................................8

*Phillips v. Wipro, Ltd.*,
    No. 17-CV-06893-HRL, 2018 WL 1317280 (N.D. Cal. Mar. 14, 2018) ..............................19

*Piper Aircraft Co v. Reyno*,
    454 U.S. 235 (1981) .............................................................................................................15

*Polar Electro Oy v. Suunto Oy*,
    No. 11-1100-GMS, 2017 WL 3713396 (D. Del. Aug. 29, 2017) ...............................12, 13, 14

*Radio Sys. Corp. v. Accession, Inc.*,
    638 F.3d 785 (Fed. Cir. 2011) ...............................................................................................9

*Rubio v. Monsanto Co.*,
    181 F. Supp. 3d 746 (C.D. Cal. 2016) ............................................................................17, 18

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ................................................................................17

*Stewart Org. Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ...............................................................................................................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    581 U.S. 258 (2017) ..................................................................................................5, 10, 12

*Trimble Inc. v. PerDiemCo LLC*,
    997 F.3d 1147 (Fed. Cir. 2021) ............................................................................................11

*Twitter, Inc. v. VoIP-Pal.com, Inc.*,
    No. 21-CV-02769-LHK, 2021 WL 5085959 (N.D. Cal. Nov. 2, 2021) ................................14

*Ventress v. Japan Airlines*,
    486 F.3d 1111 (9th Cir. 2007) ...............................................................................................9

*Viam Corp. v. Iowa Exp.-Imp. Trading Co.*,
    84 F.3d 424 (Fed. Cir. 1996) ...............................................................................................12

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

*VidAngel LLC v. ClearPlay Inc.*,
　　No. C 13-5989 SI, 2014 WL 894524 (N.D. Cal. Mar. 4, 2014) ........................................15, 21

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
　　967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...........................................................................23, 24

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
　　No. C 11-0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011) .................................7, 12, 14

**STATUTES**

28 U.S.C. § 1400(b) .........................................................................................................10, 12

28 U.S.C. § 1404(a) .................................................................................................2, 8, 15, 25

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") does nothing to cure the critical deficiencies explained in DISH's original Motion to Dismiss. Instead, the FAC adds as two additional foreign-entity plaintiffs with no California connection and five more patents. But these new foreign entities are already named in a patent infringement action and a preliminary injunction motion that DISH first brought in the District of Utah on August 22, 2023 ("Utah Action"). Thus, this FAC is a transparent attempt to add parties that DISH has already sued earlier in Utah to circumvent the "first-to-file" rule.

This dispute has nothing to do with the Northern District of California ("NDCA"), and this Court should not exercise jurisdiction over it. MG Freesites—an entity with which Defendants DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") had no prior interactions before this lawsuit—instituted the instant declaratory judgment action against DISH on July 25, 2023. MG Freesites originally sought determination that it does not infringe three of DISH's patents.[2] In response to DISH's Utah Action against different entities, on September 6, 2023, MG Freesites amended its complaint to add five additional DISH patents[3] and two new plaintiffs MG Premium and MG Billing (collectively, "Utah MG Defendants"). The FAC omits that these newly added Utah MG Defendants were already named in the first-filed Utah Action.

None of the eight Patents-In-Suit have any meaningful connection to California. Rather, those patents originated in Utah, where the patents' inventors currently reside. MOVE Networks, LLC ("MOVE"), the inventors' original company that developed the key adaptive-bitrate-streaming ("ABR") technology underlying those patents, was a Utah company.

The Plaintiffs here are not California (or even U.S.) entities, nor do they have any operations, servers, or employees in California concerning their streaming business. As to personal jurisdiction, Plaintiffs rely on a single, prior case that DISH brought against a set-top box company, Jadoo TV Inc. ("Jadoo"), that could be sued in *only* NDCA. That case never progressed past initial stages and cannot

---

[2] U.S. Pat. Nos. 10,469,555, 10,757,156, and 11,470,138 (collectively, the "Original Patents-In-Suit").
[3] U.S. Pat. Nos. 10,469,554, 9,407,564, 11,677,798, 10,951,680, and 8,868,772 (collectively, the "New Patents-In-Suit"). All eight patents are collectively referred to herein as the "Patents-In-Suit."

1

1    support specific jurisdiction.

2           Even if there were personal jurisdiction here, the most sensible and efficient forum for this

3    controversy is the District of Utah. The District of Utah is clearly a more convenient forum to resolve

4    this dispute. All eight Patents-In-Suit originated in Utah; all inventors of those patents still reside in

5    Utah; the early demonstrations of the inventive technology underlying those patents took place at

6    Brigham Young University ("BYU") in Provo, Utah; and following MOVE's acquisition by its

7    predecessors, DISH Technologies L.L.C. still operates out of MOVE's old offices in American Fork,

8    Utah. Thus, transferring this case to Utah, pursuant to 28 U.S.C. § 1631, is a suitable alternative.

9           Alternatively, DISH moves to transfer this action under 28 U.S.C. § 1404(a) to the District of

10   Utah. According to prior testimony, Plaintiffs have no place of business anywhere in the United

11   States.[4] Other than allowing access to its websites in California, Plaintiffs previously claimed they

12   have no connection to California—no employees, offices, or "presence" in the State. *Id.* It is thus

13   unlikely that Plaintiffs have any relevant documents or witnesses in California. These facts

14   demonstrate why transfer pursuant to 28 U.S.C. § 1404(a) is warranted.

15          Notably, several patents from the Patents-In-Suit's family previously have been litigated

16   through a trial at the International Trade Commission (the "ITC Action").[5] In the ITC Action, both the

17   full ITC and the Chief Administrative Law Judge found that DISH's ABR patents are valid, infringed,

18   and supported by a domestic industry.[6] Not a single California resident witness testified in the ITC

19   Action; three Utah-based witnesses did. DISH thus respectfully requests that the Court dismiss

20   Plaintiffs' action or, alternatively, transfer this action to the District of Utah.

21

22

23

24   ────────────────────────────
     [4] *See* Ex. A, MindGeek's Memorandum of Points and Authorities in Support of MindGeek's Motion
25   to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, filed in *Fleites v. MindGeek
     S.A.R.L., MG Freesites, Ltd, et al.*, Case No. 2:21-CV-4920-CJC-ADS, (hereinafter, "*Fleites v. MG
26   Freesites*"), at 10 (C.D. Cal.).
     [5] Ex. B, *In the Matter of Certain Fitness Devices, Streaming Components Thereof, and Systems
27   Containing Same*, Inv. No. 337-TA-1265 (Mar. 23, 2023) ("Commission Opinion").
     [6] *See* Ex. B; Ex. C, Chief Administrative Law Judge Initial Determination, *In the Matter of Certain
28   Fitness Devices, Streaming Components Thereof, and Systems Containing Same*, Inv. No. 337-TA-
     1265 (Sept. 9, 2022) ("CALJ Initial Determination").

## II.   BACKGROUND

### A.   **The Parties**

#### 1.   **Defendants DISH Technologies L.L.C. and Sling TV L.L.C.**

DISH Technologies L.L.C. is the sole owner of all right, title, and interest in and to the Patents-In-Suit. Ex. B, at 27. Sling TV L.L.C. is the exclusive licensee of, and has substantial rights in, the Patents-In-Suit. Both DISH Technologies L.L.C. and Sling TV L.L.C. have principal places of business at 9601 South Meridian Blvd., Englewood, CO 80112. DISH Technologies L.L.C. provides innovation and technology services and products to, among others, the DISH Network® satellite pay TV service and the Sling TV® streaming pay TV service. Admittedly, some of DISH's services and products are ultimately used or accessed in California.

#### 2.   **Plaintiff MG Freesites**

MG Freesites alleges that it is a private limited company organized and existing under the laws of the Republic of Cyprus, with a place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. Dkt. 29, ¶ 7. This location is relatively small and is shared among numerous other foreign-to-Cyprus companies. Exs. Q, Contact Us, iDS Interior Services; R, Company Information, Albourne Partners; S, Grohe Sales Companies and Offices; T, Google Street View, 195-197 Old Nicosia-Limassol Road, Dali Industrial Zone, Cyprus (captured June 2021).  MG Freesites has no operations, employees, or servers in California. *See* Ex. D, Decl. of Andres A. Andreou, *Fleites v. MG Freesites*, at ¶ 6 ("*Fleites* Andreou Decl."). MG Freesites alleges it operates a number of adult websites[7], which DISH contends infringe the Patents-In-Suit. *See* Dkt. 29, ¶3, 8.

#### 3.   **Plaintiffs MG Premium and MG Billing**

The Utah MG Defendants allege that they are also private limited companies with a principal place of business located at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. Dkt. 29, ¶¶ 9-10. MG Premium alleges it is organized and existing under the laws of the Republic of Cyprus. *Id.* ¶ 9. MG Billing alleges it is organized and existing under the laws of Ireland. *Id.* ¶ 10.

---

[7] Pornhub (pornhub.com), Pornhub Premium (pornhubpremium.com), RedTube (redtube.com), RedTube Premium (redtubepremium.com), YouPorn (youporn.com), YouPorn Gay (youporngay.com), YouPorn Premium (youpornpremium.com), Tube8 (tube8.com), and GayTube (gaytube.com) (the "MG Freesites Accused Websites").

The Utah MG Defendants allege MG Premium operates (and MG Billing handles certain related billing for) 18 adult websites ("Premium Accused Websites"), which DISH previously accused of infringing six of the eight Patents-In-Suit on August 22, 2023, in the District of Utah. Dkt. 29, ¶ 11.

B.   **DISH's Pre-Suit Communications Were With a Non-Resident Affiliate of Plaintiffs**

On March 17, 2023, DISH sent correspondence to Anthony Penhale[8] at MindGeek S.A.R.L., a Luxembourg-based company ("MindGeek"), at its Montreal office located at 7777 Boulevard Decarie, Suite 600, Montreal, Quebec H4P 2H2, Canada ("DISH's 3/17/23 Letter"). *See* Dkt. 1-6. DISH's 3/17/23 Letter notified MindGeek of an opportunity to license DISH's portfolio of patent assets directed to its ABR video streaming technology, including the Patents-In-Suit. *Id.*

On April 13, 2023, DISH received responsive correspondence from MindGeek's outside lawyer, Frank Gasparo,[9] from Venable's New York Office requesting that further communications related to DISH's 3/17/23 Letter be directed to him. *See* Dkt. 1-7. After hearing nothing from Mr. Gasparo for nearly three months, DISH followed-up with Mr. Gasparo, requesting a meeting "to discuss terms for a license to DISH's portfolio." Dkt. 1-4. On the morning of July 25, 2023, DISH's DC-based in-house lawyer and Mr. Gasparo set a call for the following day.[10] Hours after setting the call, MG Freesites filed this lawsuit in California. *See* Dkt. 1.

Importantly, none of the correspondence discussed above was with any of the Plaintiffs here or any of their representatives; nor was any of DISH's correspondence directed to any person or entity located in the NDCA. The correspondence was directed to the MindGeek Montreal-based Luxembourg entity and a New York attorney claiming to represent "MindGeek," not anyone within the NDCA. Hopkins Guy did not participate in the correspondence.

C.   **DISH's Earlier-Filed Utah Action Against MG Premium and MG Billing**

On August 22, 2023, *before* MG Freesites amended its complaint to purportedly add the Utah

---

[8] Upon information and belief, Anthony Penhale is the Chief Legal Officer of MindGeek and is located at MindGeek's Montreal location. *See* Anthony Penhale, LinkedIn, accessible at https://www.linkedin.com/in/anthonypenhale/?originalSubdomain=ca. See Dkt. 19-4. Contact our Worldwide Team, Mindgeek, accessible at https://www.mindgeek.com/contact/ (this link now redirects to https://www.aylo.com/contact/).

[9] Mr. Gasparo holds himself out as being located in New York. *See* Dkt. 1-7; Frank M. Gasparo, Venable LLP, accessible at https://www.venable.com/professionals/g/frank-m-gasparo.

[10] Ex. E, E-mail chain between DISH and Mr. Gasparo.

MG Defendants as additional plaintiffs, DISH filed its own complaint against Utah MG Defendants (and others) in the District of Utah, alleging infringement of at least five patents not referenced in the Original Complaint by the Premium Accused Websites (and others). *See* Ex. K, *DISH Techns. L.L.C. v. MG Premium Ltd,* Case No. 2:23-cv-00552-BSJ, Dkt. 1 (D. Utah Aug. 22, 2023) ("Utah Action").

D.   **MG Premium and MG Billing's Later-Filed Claims in This Action**

*After* DISH filed the Utah Action, and after DISH moved to dismiss MG Freesites' Original Complaint, Plaintiffs filed their FAC. *See* Dkt. 18, 29. Plaintiffs' FAC adds the same Utah MG Defendants as new plaintiffs and adds new claims for declaratory judgment of noninfringement of (a) the five New Patents-in-Suit by the Pornhub site and (b) all eight Patents-in-Suit by the nine other MG Freesites Accused Websites, and the 18 Premium Accused Websites. *See, e.g.*, *id.* at 1 n.1, ¶ 2. Neither the Utah MG Defendants nor the additional patents are actually new since all were first named or asserted in the Utah Action. Notably, DISH has never filed suit against MG Freesites in Utah, recognizing that MG Freesites had already filed suit here. Utah MG Defendants appear to ignore the Utah action in seeking to add those defendants here.

E.   **DISH's 2018 Patent Enforcement Action Against Jadoo**

Nearly five years before Plaintiffs initiated the instant suit, DISH filed a patent infringement action against Jadoo in this District in 2018.[11] Jadoo was a California company that sold small Android-based devices, called "pucks," that allowed a user to access an online library of pirated foreign video content. Ex. F, Complaint, Jadoo Litigation. Jadoo was a five-employee company operated in Pleasanton, California.  Jadoo had no other U.S. locations.  At the same time, DISH Network L.L.C. paid for an exclusive license to that content in the United States and lawfully offered the licensed content to its subscribers on a monthly basis.[12]

DISH sued Jadoo in this District because it was the only venue where DISH could enforce its patent rights against Jadoo in the wake of the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017). When the Jadoo Litigation was filed, Jadoo's sole "regular and established place of business" under 28 U.S.C. § 1400(b) was in Pleasanton, California.

---

[11] *DISH Techns. L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc*., No. 5:18-cv-05214-EJD (N.D. Cal. Aug. 24, 2018) (referred to hereinafter as the "Jadoo Litigation"), Dkt. 1.
[12] Ex. G, Declaration of Dan Minnick, ¶ 10.

Ex. F, ¶ 3. DISH's lawsuit against Jadoo **did not** *involve the Patents-In-Suit* but, admittedly, did concern patents *related to* the Patents-In-Suit. Even so, the merits of the patent case were never litigated, as Jadoo did not ultimately contest infringement.

The Jadoo case was stalled for the vast majority of its duration. Indeed, the parties mediated the case shortly after filing and agreed to stay proceedings in view of discussions regarding potential options for resolving the case. Jadoo Litigation, Dkt. Nos. 31, 35, 37. Shortly thereafter, Jadoo instead filed for bankruptcy, which resulted in an automatic stay of proceedings and prompted the Court to administratively close the case. *See* Jadoo Litigation, Dkt. Nos. 39, 42, 49.

DISH moved to reopen the case on June 23, 2020, in view of the Bankruptcy Court's vacating the automatic stay. *See* Jadoo Litigation, Dkt. 50. The Court granted DISH's Motion the next day, but Jadoo provided limited discovery, and the case was ultimately resolved with the entry of a Consent Judgment and Stipulated Injunction in May 2021. *See* Jadoo Litigation, Dkt. 97. Jadoo was never licensed and DISH received nothing in settlement except the injunction.

There is no connection between the Jadoo cases and the instant action.

F.    **DISH's Prior ITC Enforcement Action for the ABR Patents**

On May 19, 2021, the ITC instituted an investigation filed by DISH against Peloton, iFit, Mirror, and lululemon, for infringing five patents from the same family as the Patents-In-Suit. After completing discovery and a full trial on the merits, the ITC found three of DISH's ABR patents valid and infringed. Exs. C, D. Several third-party witnesses involved in the commercialization of the invention and deposed in that lawsuit resided in Utah, including Mark Mitchell, David Ericson, and MOVE's former CEO, John Edwards. Ex. H, ITC Action, Ericson Tr. at 7, 12, 13; Ex. I, ITC Action, Edwards Tr. at 5, 16, 27, 43; Ex. J, ITC Action, Mitchell Tr. at 12, 17, 18, 28, 29, 84. Kevin Grange, a former prosecuting attorney, is located in Utah.[13] For a brief time, MOVE hired California counsel Dan De Vos to supervise Utah-based Mr. Grange. Other than Mr. DeVos (who was not a trial witness), none of the witnesses or documentary evidence produced or identified in the ITC Action bore a connection to California.

---

[13] Plaintiff's FAC incorrectly alleges that Mr. Grange is located in California. Dkt 29, ¶¶ 21, 54-57. He is in Utah where DISH filed the earlier action against the Utah MG Defendants.

### III.   LEGAL STANDARD

#### A.   <u>Dismissal for Lack of Personal Jurisdiction</u>

Fed. R. Civ. P. 12(b)(2) requires a district court to dismiss an action when the Court lacks personal jurisdiction. In a declaratory judgment action involving a patent, Federal Circuit law governs the inquiry. *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) ("[W]e apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of patent laws.'") (citations omitted). Where, like here, an action seeks a declaration of non-infringement, personal jurisdiction is required "over the owner, assignee or exclusive licensee of the patent." *See Xilinx, Inc. v. Invention Inv. Fund I LP*, No. C 11-0671 SI, 2011 WL 3206686, at *4 (N.D. Cal. July 27, 2011) (citing *Avocent*, 552 F.3d at 1329-30).

Personal jurisdiction over an out-of-state defendant involves determining whether jurisdiction comports with due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). As recognized in *International Shoe Co v. State of Washington*, "due process requires . . . [a defendant to] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (citations omitted).

Here, Plaintiffs allege only specific jurisdiction.[14] Dkt. No. 29, ¶¶ 19-47. In ascertaining whether specific personal jurisdiction is appropriate, courts apply a three-part analysis: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed*, 249 F.3d at 1360 (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)).

As to the reasonableness factor, the burden falls on the defendant to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Courts consider the *Burger King* factors to determine whether specific personal jurisdiction is unreasonable: [1] "the burden on the defendant," [2] "the

---

[14] In its FAC, Plaintiffs allude to a set of unrelated allegations without specifying any basis of how those allegations relate, if at all, to any theory of specific or general personal jurisdiction. Rather, the only basis Plaintiffs allege for personal jurisdiction is specific jurisdiction based on DISH's prior lawsuit against Jadoo. *See* Dkt. 29, ¶¶19-57.

forum State's interest in adjudicating the dispute," [3] "the plaintiff's interest in obtaining convenient and effective relief," [4] "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and [5] the "shared interest of the several States in furthering fundamental substantive social policies." *Apple Inc. v. Zipit Wireless, Inc*., 30 F.4th 1368, 1379 (Fed. Cir. 2022) (citations omitted).

### B.  **Transfer to Cure Want of Jurisdiction**

28 U.S.C. § 1631 directs that "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action [] could have been brought at the time it was filed" in the event that the "court finds that there is a want of jurisdiction[.]"

### C.  **Transfer for Convenience under § 1404(a)**

District courts are authorized to transfer any civil action to any other district or division where the case may have originally been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Once the court establishes that the action could have been brought in the forum sought by the moving party, the court will analyze numerous factors against the backdrop of convenience and fairness. *See Park v. Dole Fresh Vegetables, Inc*., 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). The court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Courts in the NDCA examine the following factors to determine convenience and fairness under § 1404(a) (some of which overlap with *Decker*): (1) the plaintiffs' choice of forum, (2) the convenience of the parties, (3) the convenience of the witnesses, (4) the ease of access to the evidence, (5) the familiarity of each forum with the applicable law, (6) the feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 580 (N.D. Cal. 2020). Courts may examine all these factors, but "[n]o single factor is dispositive." *Id* at 580 (cleaned up). "[T]he weighing of the factors for and against transfer is best left to the discretion of the trial judge." *Id.* at

8

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

580 (citing *Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th Cir. 2007) (citations omitted)).

## IV.   ARGUMENT

### A.   DISH's Alleged Contacts Cannot Support Specific Personal Jurisdiction

In its FAC, Plaintiffs identify *three* forum-related activities that it contends supports specific jurisdiction in the NDCA,[15] all of which concern the Jadoo Litigation: (1) DISH's lawsuit against Jadoo in the NDCA, which was the only proper venue for the dispute and did not involve the Patents-In-Suit; (2) DISH's entering into a Consent Judgment and Stipulation Injunction with Jadoo, which resolved the Jadoo Litigation and maintained jurisdiction only as to that dispute between DISH and Jadoo; and (3) DISH's retention of "one Baker Botts L.L.P. attorney" located in the NDCA for the Jadoo Litigation. *See* Dkt. 29, ¶¶ 19-47. The above-identified activities cannot support specific personal jurisdiction here. *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (explaining the only activities that can give rise to specific jurisdiction over a patentee sued for declaratory judgment are those related to the enforcement or defense of the patent).

#### 1.   DISH Did Not "Purposefully Avail" Itself of NDCA

As an initial matter, DISH did not "purposefully avail" itself of the privileges and benefits of NDCA as a result of the Jadoo Litigation. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (citing *Int'l Shoe*, 326 U.S. at 319).[16] The Supreme Court has explained that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of," *inter alia*, "***the 'unilateral activity of another party or a third person*.'**" *Burger King*, 417 U.S. at 475 (emphases added) (internal citations omitted). But it is for this exact reason that DISH had to file its lawsuit against Jadoo in NDCA: Jadoo, through its own actions and/or decisions (1) "resided" in the NDCA; and (2) had no other "regular and established place[s] of business," at the time DISH

---

[15] Plaintiff does not allege general personal jurisdiction is proper under any theory. *See* Dkt. 1, ¶¶ 19-47.

[16] *See also Burger King*, 471 U.S. at 473–74 (1985) (citing *Kulko v. Cali. Superior Court*, 436 U.S. 84, 96 (1978)) (explaining that "where individuals 'purposefully derive benefit' from their interstate activities . . . it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed").

filed its lawsuit. *See* 28 U.S.C. §1400(b); *see TC Heartland*, 581 U.S. at 262 (holding that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute").

In other words, Jadoo alone made the decision of where to reside and whether (if at all) to have regular and established places of business. This "unilateral activity" by Jadoo restricted where it could be sued for patent infringement in view of *TC Heartland*. This is not a situation, then, where DISH *voluntarily* invoked the "benefits and protections" of NDCA in order to enforce its patent rights. *See Ouellette v. True Penny People, LLC*, 352 F. Supp. 3d 144, 153 (D. Mass. 2018) ("Voluntariness requires that the defendant's contacts with the forum state are 'not based on the unilateral actions of another party or a third person.'") (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996) (citing *Burger King*, 471 U.S. at 475)). Rather, DISH was forced to choose between exercising its federal patent rights against Jadoo or allowing Jadoo—an infringing pirate who could only be sued in the NDCA—to continue infringing upon DISH's patented technology. At bottom, the due process requirements for establishing personal jurisdiction are rooted in fundamental fairness, and principles of equity and fairness are not upheld by forcing a party to succumb to a court's jurisdiction whenever enforcement of the party's patent rights *required* that litigation be brought in a particular forum. *See Helicopteros*, 466 U.S. at 414 (citing *Int'l Shoe*, 326 U.S. at 316).

### 2. The Jadoo Litigation, By Itself, Cannot Confer Jurisdiction

All three of the forum-related activities that Plaintiffs rely on in support of its argument for specific jurisdiction relate to the same enforcement action—the Jadoo Litigation—which did not involve the same parties, the same facts, or, importantly, the same patents. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) ("only enforcement or defense efforts related to the [patent-in-suit] . . . are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee.") (citing *Avocent*, 552 F.3d at 1336). Thus, the claims in this case do not relate to any enforcement actions taken by DISH in this District. *See Avocent*, 552 F.3d at 1332-33 ("The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'") (footnote omitted) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,

10

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

444 F.3d 1356, 1363 (Fed. Cir. 2006)). Though courts in this District have held that specific jurisdiction in a declaratory judgment action may rest on a patentee's enforcement activities concerning *related* patents, each of those cases emphasized that the patentee had ***repeatedly*** availed itself of the forum that it subsequently challenged as having no specific jurisdiction. *See, e.g.*, *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1097 (N.D. Cal. 2013); *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 963 (N.D. Cal. 2020). That is not the case here.

The Jadoo Litigation is the *only* patent enforcement action DISH has brought in the NDCA that asserted patents related to the Patents-In-Suit. And, as explained in detail above, DISH had no other option than to enforce them in this District if it wanted to stop Jadoo's infringement. *See supra* §§ III.C & IV.A.1. Such circumstances cannot support a finding that DISH has sufficient minimum contacts for this Court to confer specific jurisdiction over DISH.

### B. <u>Exercising Personal Jurisdiction over DISH Would Violate Traditional Notions of "Fair Play and Substantial Justice"</u>

Even if the Court finds that DISH's alleged forum-related activities constitute sufficient minimum contacts for specific jurisdiction purposes (which it should not for the reasons identified above), the Court should decline to exercise jurisdiction over DISH because doing so would violate traditional notions of fair play and substantial justice. Importantly, the instant case presents one of the "rare situation[s]" where the "plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King*, 471 U.S. at 477). This is borne out by an analysis of the *Burger King* factors. *See supra* § III.A.

#### 1. **Factor 1: Burden on Defendant**

The "burden on the defendant" is the "primary concern" when evaluating whether the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice. *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1157–58 (Fed. Cir. 2021). And, here, it would be significantly more burdensome for DISH to litigate this case in the NDCA because no relevant witnesses and evidence are located in California, and because several key witnesses (e.g., the inventors

---

11

of the Patents-In-Suit) are all located in Utah, outside the subpoena power of courts in California.

Though DISH has—on a single occasion (*i.e.*, the Jadoo Litigation)—found a way to "shoulder [] the burden" of litigating in the NDCA, the circumstances of that litigation were very different. *See Xilinx*, 848 F.3d at 1358 (citing *Viam Corp. v. Iowa Exp.-Imp. Trading Co*., 84 F.3d 424, 430 (Fed. Cir. 1996)). For one, DISH had to bring its patent infringement lawsuit against Jadoo in the NDCA because of (1) the patent venue statute,[17] (2) the Supreme Court's holding in *TC Heartland*,[18] and (3) Jadoo's unilateral decision to incorporate in California and have no other regular and established places of business in any other forum in the United States. Secondly, the Jadoo Litigation was stayed and/or administratively closed for a majority of the time between filing and final disposition and did not advance far enough to require the production of the bulk of the relevant evidence, given that Jadoo's position was that it removed the infringing functionality soon after the Complaint was filed. The facts here are thus very different from cases where the party contesting specific jurisdiction availed themselves of the forum numerous times in conjunction with enforcement actions involving the same or related patents. *See, e.g.*, *Apple Inc.*, 506 F. Supp. 3d 947; *ActiveVideo*, 975 F. Supp. 2d 1083. This factor, therefore, does not favor exercising jurisdiction.

2.     **Factor 2: State's Interest in Adjudicating the Underlying Dispute**

Where, as here, neither party is a California resident, California's interest (if any) is attenuated. *Polar Electro Oy v. Suunto Oy*, No. 11-1100-GMS, 2017 WL 3713396, at *5 (D. Del. Aug. 29, 2017) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.") (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114 (1987)). Plaintiffs, foreign residents, fail to identify a compelling connection between California and its specific claims and suggests that its decision to sue in this District is a result of forum-shopping. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. --, 141 S. Ct. 1017, 1024 (2021) (emphasizing that the plaintiffs in that case "were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State"). Accordingly, this factor does not weigh in favor of exercising jurisdiction.

---

[17] 28 U.S.C. § 1400(b).
[18] 581 U.S. 258 (2017) (holding that corporate defendants "reside" in their state of incorporation for establishing venue pursuant to § 1400).

### 3. **Factor 3: Plaintiffs' Interest in Obtaining Convenient and Effective Relief**

Even assuming Plaintiffs have an interest in seeking a declaration of non-infringement, there is no reason that this factor should weigh in favor of exercising jurisdiction over DISH. Notably, this is not a situation where Plaintiffs would be left without remedy if NDCA could not exercise personal jurisdiction over DISH; indeed, there are other forums where Plaintiffs could have brought suit against DISH, including in Utah, where relevant witnesses are located. Furthermore, there is no apparent or articulated reason why NDCA would provide more convenient and effective relief than any other potential forum where this dispute may be heard. *See Polar Electro*, 2017 WL 3713396, at *6 (finding that the "interest in obtaining effective relief" factor weighed against exercising jurisdiction over defendant where a foreign plaintiff had no particular interest in keeping the dispute in the forum and could obtain effective relief against defendant elsewhere).

### 4. **Factor 4: The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies**

This factor concerns the most efficient resolution of the case. *See Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, No. 20-CV-04768-LHK, 2021 WL 121130, at *12 (N.D. Cal. Jan. 13, 2021). Though a handful of federal district courts across the United States have been assigned cases that involve at least some of the Patents-In-Suit, the geographic centers of DISH's ABR cases are clearly Utah and Delaware. For example, DISH has three active cases asserting the Patents-In-Suit in the District of Utah and four in Delaware.[19] If anything, allowing this case to continue in NDCA while the cases in Delaware and Utah remain ongoing would complicate the efficient resolution of this matter. *See, e.g., id.* at *12 (relying on Court's experience in presiding over the same patents to guide efficient resolution analysis). The same is true when considering enforcement actions involving *related* patents—here, the merits of the Jadoo Litigation in NDCA were never litigated. *See supra* § II.C.

---

[19] *See, e.g., DISH Techns. L.L.C. v. MG Premium Ltd*, No. 2:23-cv-00552 (D. Utah); *DISH Techns. L.L.C. v. Vidgo Inc.*, No. 2:23-cv-00624 (D. Utah); *DISH Techns. L.L.C. v. WebGroup Czech Republic A.S.*, No. 2:23-cv-00553 (D. Utah); *DISH Techns. L.L.C. v. A Parent Media Co. Inc.*, No. 1:23-cv-01000 (D. Del.); *DISH Techns. L.L.C. v. Beachbody, LLC*, No. 1:23-cv-00987 (D. Del.); *DISH Techns. L.L.C. v. fuboTV Media Inc.*, No. 1:23-cv-00986 (D. Del.); and *DISH Techns. L.L.C. v. Fit Health & Fitness, Inc.*, No. 1:23-cv-00963 (D. Del.). Two of the Patents-In-Suit (*i.e.*, the '555 and '156 Patents) were asserted in cases in the Eastern District of Texas ("EDTX"), however, those cases were promptly stayed, pursuant to 28 U.S.C. § 1659(a), pending the outcome of the ITC Action (which has an ongoing appeal).

As discussed above, the FAC merely reflects Plaintiffs' attempt to add five additional patents already subject to DISH's pending infringement action in the District of Utah against the Utah MG Defendants. *See* Ex. K, DISH's Utah Complaint. A preliminary injunction in that case is pending. Ex. M, DISH's Motion for Preliminary Injunction in Utah. The District of Utah is thus most specially situated to handle this matter relative to any other district courts.

The interstate judicial system also has an interest to afford Plaintiffs with a forum to seek a declaratory judgment of non-infringement. *Polar Electro*, 2017 WL 3713396, at *7. That can be done in any judicial district where jurisdiction is proper, including Utah, where DISH agrees to stipulate to jurisdiction. *See id.* (explaining that "pursuing litigation in a different, but jurisdictionally proper forum, would not hamper [plaintiffs'] ability to find or obtain the same relief"). Moreover, the interstate judicial system's interest in obtaining the most efficient resolution of the controversies is not "well served by litigation in a forum that is foreign to both parties, particularly where other, more appropriate fora are also available." *Gro Master, Inc. v. Farmweld, Inc.*, 920 F. Supp. 2d 974, 984 (N.D. Iowa 2013). One important consideration in determining a more appropriate forum is the location of witnesses and evidence for the case. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995).

Thus, because the production of witnesses and evidence disproportionately affects DISH if the suit were to proceed in the NDCA, whereas Plaintiffs would not be prejudiced by litigating the case elsewhere, such as Utah, this factor weighs in DISH's favor and against exercising jurisdiction.

### 5. Factor 5: Shared Interest of the Several States in Furthering Fundamental Substantive Social Policies

Since patent law is governed exclusively by federal law, the shared interest of the states is indirect: to prevent infractions of federal law from occurring within a state's borders. *Polar Electro*, 2017 WL 3713396, at *8. Because "[t]here does not appear to be any conflict between the interests of California and any other state," this factor is neutral. *Twitter, Inc. v. VoIP-Pal.com, Inc.*, No. 21-CV-02769-LHK, 2021 WL 5085959, at *15 (N.D. Cal. Nov. 2, 2021) (quoting *Xilinx*, 848 F.3d at 1356).

\* \* \* \* \*

Because Plaintiffs' interest and California's interest in adjudicating the dispute in the NDCA are

---

14

clearly outweighed by the burden of subjecting DISH to litigation here, it would offend traditional notions of fair play and substantial justice for NDCA to exercise jurisdiction over this dispute.

### C.   **Alternatively, the Section 1404(a) Transfer Factors Support Transfer of Plaintiffs' Claims Because the Center of Gravity for This Case Lies with Utah, and This Dispute Has No Relevant Connection to California.**

The District of Utah is "clearly more convenient" than the NDCA. Utah is the "the center of gravity" for this case—the key witnesses who developed the invention, the relevant documents, and the headquarters of MOVE, the company that commercialized the invention of the Patents-In-Suit before its acquisition by a DISH Technologies L.L.C. predecessor, are all located in Utah. Each of the applicable factors weighs in favor of transfer, and NDCA has no meaningful connection to this dispute.

#### 1.   **This Case Could Have Been Brought in the District of Utah.**

The first determination to be made under 28 U.S.C. § 1404(a) is whether the claim could have been filed in the judicial district to which transfer is sought. *Ben Chang v. Biosuccess Biotech, Co*., No. 14-CV-00425-LHK, 2014 WL 12703706, at *4-5 (N.D. Cal. May 30, 2014). Here, it is clear this case could have been brought in the District of Utah.

Under 28 U.S.C. § 1400(b), venue is proper for patent infringement actions in a judicial district where a defendant resides. DISH maintains a facility at American Fork, Utah, the same facility that once served as the principal place of business for MOVE, the original owner and assignee of the patent family at issue here. Ex. G, ¶¶ 6,7. If the Court were to apply § 1391 to determine venue, general jurisdiction would certainly be satisfied in Utah. §§ 1391(b)(1), (c)(2). In addition, the invention was commercialized in Utah. Thus, whether venue is analyzed under § 1400 or § 1391, the action could have originally been brought in the District of Utah.

#### 2.   **Convenience of the Parties and Witnesses Weighs Strongly in Favor of Transfer to Utah**

Plaintiffs' choice of forum is given considerably less weight as Plaintiffs do not reside in the forum. *See VidAngel LLC v. ClearPlay Inc*., No. C 13-5989 SI, 2014 WL 894524, at *3 (N.D. Cal. Mar. 4, 2014) (citing *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 236 (1981)); *see also Matt v. Baxter Healthcare Corp.*, 74 F. Supp. 2d 467, 470 (E.D. Pa. 1999) ("A locale that is not the home of the plaintiff and where few of the operative facts occurred is entitled to less weight") (citation omitted).

15

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC

In evaluating the convenience of the parties, courts have weighed the desire to avoid multiple litigations. *Fitbit*, 336 F.R.D. at 587 (finding convenience factor favored transfer where related patent actions between the parties were pending in the transferee court). Here, as noted above, DISH filed an action in Utah against the Utah MG Defendants - ***before*** Plaintiffs filed this FAC - for infringement of six patents related to the patents at issue in this case, including a patent that overlaps with the patents at issue here. *See* Ex. K. Moreover, DISH is currently litigating multiple lawsuits in Utah against (1) WebGroup Czech Republic, s.a. ("WGCZ") and NKL Associates s.a. ("NKL") and (2) VidGo for infringement of the same six patents related to the patents at issue here. *See* Ex. L, DISH's Utah Complaint against WGCZ and NKL; Ex. N, Vidgo Complaint.

As to the convenience of Plaintiffs, they are foreign corporations and admittedly have no connection to California. Thus, Plaintiffs' convenience is the same whether the litigation occurs in this District or Utah; therefore, transferring this case to Utah would not impact any convenience to Plaintiffs.

Further, Plaintiffs had no issue availing itself of the privileges of doing business in the District of Utah. Specifically, upon the passage of Utah Senate Bill 287, which requires the Plaintiffs' websites to verify the adult age of viewers, MG Freesites began requesting Utah that visitors on their site contact their representatives to repeal the law.



This campaign by Plaintiffs create contacts between Plaintiffs and the District of Utah. *See Burger*

*King*, 471 U.S. at 475-76 (holding that due process permits the exercise of personal jurisdiction over a party who purposefully directs his activities at residents of a forum). Plaintiffs cannot now simultaneously suggest that it is somehow inconvenient to litigate in Utah.

DISH maintains a facility in American Fork, Utah, which was acquired from MOVE, the entity that originally owned and commercialized the Patents-In-Suit. Ex. G at ¶¶ 6,7. Thus, both parties have contacts with the District of Utah. As a result, this factor weighs in favor of transfer.

Moreover, "[t]he convenience of witnesses is said to be the most important factor in passing on a transfer motion." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). Of particular importance is the convenience of non-party witnesses and their relative importance in the case. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160–65 (S.D. Cal. 2005) (finding convenience factor weighed heavily in favor of transfer where defendants demonstrated that they had important witnesses with first-hand knowledge relevant and material to plaintiff's allegations). Ex. G at ¶ 6. Two inventors, Mark Hurst and David Brueck, live in Utah and are likely third-party witnesses in this case. *Id.* Messrs. Hurst and Brueck are current and former MOVE employees (respectively), inventors, and early participants in the commercialization of the Patents-In-Suit who likely have relevant knowledge.[20] Messrs. Hurst and Brueck thus have deep knowledge of the relevant patent and commercialization efforts and can provide testimony relevant to this case. Another inventor, Drew Major, is currently employed at DISH's American Fork location and resides in Utah.

Commercialization of the invention also occurred in Utah in 2005. After filing the first patent in the family, the MOVE team approached the TV station for BYU with an offer to live stream the prominent October 2005 Church of Jesus Christ of Latter-day Saints General Conference around the world using its ABR streaming technology to a large audience under real world conditions. *See id; see also* Ex. H at 7, 12, 13; Ex. I at 5, 16, 27, 43; Ex. J at 12, 17, 18, 28, 29, 84. MOVE's name prominently displayed during the streaming and served as the first large-scale use of the ABR technology disclosed in the patent application. MOVE's then President and CEO, John Edwards, was deposed in the ITC Action, along with third parties Mark Mitchell and David Ericson of BYU, all residing in Utah. *See*

---

[20] There is a presumption that non-party witnesses are unwilling to travel, so no evidence needs to be submitted by DISH to establish this point. *See, e.g.*, *In re DISH*, 2021 WL 4911981, at *3; *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021).

*id.* These third-party witnesses have relevant information regarding MOVE's early commercialization efforts and invention story and would only be available through compulsory process in Utah.

Fed. R. Civ. P. 45(c) provides a court with the power to command a non-party to appear for trial or deposition in the state where it is located. Because there are no known potential witnesses in California that would be called to trial, California's subpoena power provides no benefit here. Conversely, the subpoena power of the District of Utah will potentially prove useful for several key witnesses, including Messrs. Brueck, Hurst and Edwards. Utah's subpoena power may potentially prove useful for BYU witnesses Mark Mitchell and David Ericson, as well. These facts favor transfer. *Apple Inc. v. Wi-LAN Inc*., No. C 14-2838 CW, 2014 WL 4477362, at *5 (N.D. Cal. Sept. 11, 2014).

Utah would undoubtedly be more convenient for Messrs. Hurst and Brueck. As third party witnesses, DISH would not be able to have a compulsory process to bring them to trial outside of Utah. *See Jones v. GNC Franchising, Inc*., 211 F.3d 495, 498-99 (9th Cir. 2000) (listing "the availability of compulsory process to compel attendance of unwilling non-party witnesses" as a factor for courts to consider in evaluating motions to transfer venue under § 1404(a)); *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 765 (C.D. Cal. 2016) ("[T]he fact that potential key witnesses . . . are located outside of this district, and this Court may not exercise compulsory process over them, may impede one side's ability to prove its case. This is not in the interest of justice. This factor strongly favors transfer."). The same is true of Mr. Major if he were to retire before trial, as he is in his 60s.

The Patents-In-Suit have already been litigated previously through a trial at the ITC. In the ITC Action, three of DISH's ABR patents were found valid, infringed, and supported by a domestic industry. *See* Exs. B and C. Tellingly, having undergone a substantial trial already, the facts established and uncovered demonstrated that with the exception of a single prosecuting attorney,[21] no other contact existed with California—no witnesses, documents, or prior art came out of California. This case involves overlapping patents and the same family of patents covering the same ABR technology asserted in the ITC Action.[22] In short and as described in the ITC Action, the ABR technology was

---

[21] Daniel DeVos, one of the two prosecuting attorneys that briefly worked on the prosecution of the patent family before acquisition by DISH in 2010, works out of San Jose, California. He was deposed remotely in the ITC Action. He did not appear for trial nor did any party ask that he do so.
[22] U.S. Patent Nos. 10,469,555 and 10,757,156 overlap with the ITC Action.

developed in America Fork, Utah, by three inventors that still reside in Utah. *See* Exs. B and C. DISH still owns the location wherein the development occurred: its facility in American Fork, Utah. Ex. G at ¶¶ 6,7. The witnesses involved in deploying the first prototype of the ABR technology all reside in Utah. *Id*. As fully developed in the significant ITC record, no evidence or tie to California was discussed or offered into evidence. *See generally* Ex. B. Simply put, nothing occurred in California related to the development of the ABR technology—rather, everything occurred in Utah.

Thus, unless the case is transferred, DISH will be significantly deprived of any ability to use compulsory process for these highly relevant witnesses.

### 3.    The Sources of Proof are Not in California

In a separate case seeking to establish a lack of jurisdiction in California, MG Freesites identified that it only had "general availability of the website" in California and argued that minor fact "does not create the substantial connection to [California] necessary to support the exercise of jurisdiction." Ex. A, at 10 (citing *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020)).

Meanwhile, DISH has no engineering documents, source code, or other relevant documents in this District related to the Patents-In-Suit. As demonstrated in the ITC Action, any sources of proof could be and have been collected electronically, including source code. *See Phillips v. Wipro, Ltd*., No. 17-CV-06893-HRL, 2018 WL 1317280, at *5 (N.D. Cal. Mar. 14, 2018). Nonetheless, this collection was made in part at the American Fork, Utah facility of DISH, including early company documents located on computers of current and former MOVE personnel.

Plaintiffs' reliance on a "DISH" office in California is irrelevant to the analysis here. That office was acquired with the acquisition of Sling Media technology related to place-shifting of content (watching content stored on a hard-drive of a Digital Video Recorder at one location in another location). This unrelated place-shifting technology was developed out of Foster City, CA. That office and technology have nothing to do with the ABR technology invented and commercialized in Utah. Furthermore, Plaintiffs' assertion that DISH advertises job postings for Foster City is factually incorrect. As shown by Plaintiffs' own exhibit, none of the postings are listed for California. Dkt. No. 29-18. Thus, no relevant documents are likely to be found in California from either party.

In similar circumstances, the Federal Circuit has transferred prior DISH cases to the requested

District based on convenience. Indeed, DISH has successfully filed and won prior motions to transfer under § 1404(a) relying on the same grounds and factors asserted here.

In the matter *In re DISH Network L.L.C.* case, (the "BBiTV matter"), DISH Network L.L.C. pursued a petition for writ of mandamus to direct the Western District of Texas ("WDTX") to transfer a patent matter from Texas to Colorado. No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021). The Federal Circuit ultimately granted relief and issued a writ transferring the case to Colorado. *Id.* The basis of the writ relied on the fact that no witness for BBiTV or DISH had connections to Texas, and that DISH's facilities in Texas had no connection to the infringement allegations. *Id*. at *1. Former employees of DISH resided within the subpoena power of Colorado, not Texas, and all of DISH's witnesses and developers for the accused product were in Colorado. *Id*. at *1. BBiTV was a non-practicing entity based in Hawaii. *Id*. In granting the mandamus, the Federal Circuit found the "center of gravity" of the action to clearly be in Colorado despite the presence of DISH in the WDTX, and despite the presence of several other cases in WDTX involving the same patents. *Id*. at *2.

Similarly, in *Digital Broadcasting Solutions, LLC v. DISH Network, L.L.C.*, (the "DBS matter"), the sole inventor and patent owner bringing the patent infringement action against DISH Network L.L.C. lived in Los Angeles and did not work or have a license to practice law in Texas. 2:22-cv-0335-JRG, Dkt. No. 48 (E.D. Tex. June 21, 2023). The Court balanced the factors and granted DISH's request to transfer to Colorado in view of the location of witnesses and sources of proof. DISH's accused product in that case was developed and evidence was maintained in Colorado. *Id.* at 9. DISH's own patents, predating the patents asserted by DBS, which were developed in Colorado. All former DISH prior art inventors and developers lived in Colorado. Ultimately, the EDTX court transferred the case to Colorado after finding no key witnesses or evidence in Texas.

Thus, from the perspective of DISH's own transfer history, and in consideration of § 1404(a), the present action presents the same lack of witnesses and evidence within this District. In the BBiTV and DBS matters, the courts ultimately granted transfer based on very similar facts at issue here, demonstrating that transfer is warranted in this case. Here, the relevant technology was not developed in California, as demonstrated fully by the ABR ITC Action involving the same family of patents that—having undergone significant discovery and trial—raised no connection to California.

4.    **Other Factors Affecting Ease and Expense of Trial Favor Transfer**

The Court considers other factors when deciding a motion to transfer, including the familiarity of each forum with the applicable law, the feasibility of consolidation with other claims, any local interest in the controversy, and the relative court congestion and time of trial in each forum. *VidAngel LLC v. ClearPlay Inc*., 2014 WL 894524, at **3, 5-6. This is a patent infringement lawsuit governed by federal law with which all federal courts are familiar. *See In Re TS Tech USA Corp*., 551 F.3d 1315, 1320 (Fed. Cir. 2008). Thus, this factor is neutral.

As to the feasibility of consolidation with other claims, DISH has pursued other MindGeek entities in Utah, including the Utah MG Defendants (which MG Freesites adds to this lawsuit), along with several other related entities. *See* Exs. K and M; Ex. N (Vidgo Complaint). MG Freesites purportedly maintains corporate separation from the Utah MG Defendants, but they will nonetheless provide testimony together. For example, in *Fleites v. MindGeek S.A.R.L.*, MG Freesites and several other MG entities jointly offered the *Fleites* Andreou Decl. in support of their joint motion to dismiss an action pending in the Central District of California based on a lack of jurisdiction. *See* Ex. D. Thus, given that discovery would be overlapping for the MindGeek entities, the potential for consolidation of this case with DISH's pending Utah case against the Utah MG Defendants supports transfer. In addition to the case against the Utah MG Defendants, DISH has pending cases against WGCZ and Vidgo. Moreover, judicial economy is disserved by having separate actions concerning the same patents and the same or related parties litigated in both this District and Utah.

As to local interest in this controversy, it is indisputably strongest in Utah, where the parties have third-party and party witnesses, including the inventors that developed and commercialized the ABR technology and developed the patents at issue. Indeed, DISH still maintains the American Fork, Utah offices that served as the original MOVE headquarters and still employs approximately seventy-five employees in Utah at that location. Ex. G at ¶ 7. The only basis to maintain the case in California, a prior lawsuit filed by DISH against Jadoo five years ago based on Jadoo's presence in the NDCA, does not give any local interest in this controversy in this District. In sum, the local interest in this controversy is much stronger in Utah than in the NDCA.

Turning to the relative court congestion, as of June 30, 2023, the District of Utah had 498

pending actions per judgeship, while the NDCA had 989 pending actions per judgeship. *See* Ex. P.[23] As for time to trial, the median time from filing to trial in civil actions in the District of Utah is 54.4 months, and in the NDCA is 36.6 months. *Id.* On balance, these offsetting factors are neutral.

D. **Alternatively, the First-To-File Rule Supports Dismissal or Transfer of the Utah MG Defendants' Claims.**

As evidenced by the addition of the Utah MG Defendants and new claims against new patents, DISH's first-filed Utah Action against the Utah MG Defendants is different from the initial case brought by MG Freesites alone. Unlike in DISH's Utah Action, neither the Utah MG Defendants nor the Premium Accused Websites were included in MG Freesites' Original Complaint in this action. *See generally* Dkt. 1. Despite Plaintiffs' attempt to obfuscate its separateness from the Utah MG Defendants in their FAC, the Utah MG Defendants are admittedly separate corporate entities from MG Freesites that operate completely different and independent websites than MG Freesites. *Compare* Dkt. 29, ¶¶ 7-11 (acknowledging Plaintiff's separateness from other Aylo entities), 12 *et seq.* (grouping Plaintiff and the Utah MG Defendants together as "Aylo"). As attested by a MindGeek representative in sworn declarations, the Utah MG Defendants *have nothing to do with MG Freesites'* Pornhub and the other MG Freesites Accused Websites. Ex. D, ¶ 17; Ex. O, Decl. of Andres A. Andreou, *Jane Does 1-9 v. Murphy et al.*, Dkt. No. 233-3, at ¶ 17 ("*Jane Does* Andreou Decl."). Furthermore, five of the six patents asserted against the Utah MG Defendants in DISH's Utah Action were not included in MG Freesites' Original Complaint in this action. *Compare* Dkt. 1, ¶ 2 *with* Ex. K, ¶¶ 16-21.

With no overlap in accused infringers, no overlap in accused websites, and overlap of only a single patent between DISH's Utah Action and MG Freesites' Original Complaint in this action, there can be no dispute that the Utah Action is the first-filed action between DISH and the Utah MG Defendants. MG Freesites' attempt to now add the separate and distinct Utah MG Defendants to the present action under the guise of a simple amendment after DISH has already sued these separate entities in Utah is a blatant attempt at forum shopping and pure gamesmanship. This does not change

---

[23] United States District Courts Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023), available at
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2023.pdf

the first-filed status of DISH's Utah Action. Simply put, the case between DISH and the Utah MG Defendants does not belong together with the case between MG Freesites and DISH. And neither of them belongs in this Court for the reasons raised herein.

1. **DISH's Utah Action is the First-Filed Action Against the Utah MG Defendants and Their Claims Should be Dismissed or Transferred**

"A federal district court has discretion to dismiss, stay, or transfer a case to another district court under the first-to-file rule." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013) (citations omitted). The rule "is a generally recognized doctrine of federal comity permitting a district court to decline jurisdiction over an action." *Id.*; *see also Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). It "is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments," and "[a]s such, the rule should not be disregarded lightly." *Wallerstein*, 967 F. Supp. 2d at 1292-93 (citation omitted). "Courts analyze three factors in determining whether to apply the rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues." *Id.* at 1293 (citation omitted). "This court's application of the first-filed rule in patent cases is governed by Federal Circuit authority." *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 WL 1991094, at *2 (N.D. Cal. May 5, 2008).

DISH filed its Utah Action on August 22, 2023, which is 15 days before Plaintiffs filed the FAC on September 6, 2023, to add claims by the separate and distinct Utah MG Defendants. This chronology makes DISH's Utah Action the first-filed action between DISH and the Utah MG Defendants. There is also similarity of the parties and the issues between DISH's first-filed Utah Action and the claims recently added to the present action related to the Utah MG Defendants. In its first-filed Utah Action, DISH asserts that 47 accused websites operated by the Utah MG Defendants[24]—including the Premium Accused Websites—infringe six of the eight Patents-in-Suit here. In Plaintiffs' FAC, the newly added claims similarly seek determination that the Premium

---

[24] Plaintiffs' FAC asserts that the named plaintiff in DISH's Utah Action "MG Billing Ltd" does not exist. Dkt. 29, ¶ 89. This is belied by sworn declarations by MindGeek's representative, which refers to "MG Billing Ltd." Ex. O, ¶¶ 16-18. Plaintiffs cannot credibly assert that named plaintiff "MG Billing Ltd" in DISH's Utah Action is a different party than newly added party "MG Billing Limited" in this action.

Accused Websites do not infringe the eight Patents-in-Suit. Thus, there is substantial similarity in parties and issues between the two actions. Given DISH's Utah Action's first-filed status and the similarities between the two actions, the Court should use its discretion to dismiss the newly added claims or transfer them to DISH's Utah Action.

2.      **"Double Dose of Discretion" Exceptions to the First-to-File Rule**

Even if the present action was somehow the first-filed action, this Court should apply the exceptions to the first-to-file rule and use its discretion to dismiss the newly added claims or transfer them to the Utah Action. The first-to-file rule is "not rigidly or mechanically applied—'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)). "Trial courts have discretion to make exceptions to this general rule in the interest of justice or expediency." *Commc'ns Test Design*, 952 F.3d at 1362. Moreover, "[w]hen one of two competing suits in a first-to-file analysis is a declaratory judgment action," as is the case here, "district courts enjoy a double dose of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions." *Id.* at 1362-63 (cleaned up). "Exceptions to the first-to-file rule include where the filing of the first suit evidences bad faith, anticipatory suits, and forum shopping." *Wallerstein*, 967 F. Supp. 2d at 1293 (citing *Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

All three exceptions support dismissal or transfer of the newly added claims here. These claims should, and must, be brought as compulsory counterclaims in the DISH Utah Action. *See* Fed. R. Civ. P. 13. But instead of doing so, the Utah MG Defendants seek to belatedly add these claims to MG Freesites' unrelated anticipatory declaratory judgment suit involving a different MindGeek entity, a different accused website, and two different patents. This smacks of gamesmanship and bad faith. It is not a situation in which an entity seeks to obtain judicial resolution through the Declaratory Judgment Act rather than await the commencement of legal action by a patent owner, since DISH had already filed suit against the Utah MG Defendants several weeks prior to this FAC. The Federal Circuit has repeatedly affirmed dismissal or transfer of declaratory judgment claims under the first-to-file rule

24

where the claims were a "tactical measure" and "not a purpose that the Declaratory Judgment Act was designed to serve." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir. 1996), *overruled in part on other grounds by Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also Commc'ns Test Design*, 952 F.3d at 1364-65. That is precisely the nature of the Utah MG Defendants' claims here. The Utah MG Defendants could have been the first-to-file along with MG Freesites but chose not to. Instead, MindGeek hastily filed MG Freesites' anticipatory suit without negotiating with DISH and guessed (incorrectly) as to which entities and websites DISH would pursue following its March 2023 notice letter. The Utah MG Defendants' attempt here to undo DISH's choice of the most convenience forum is a shameless attempt at forum shopping. The Court in its discretion should dismiss the Utah MG Defendants' claims or transfer them to the Utah Action.

### 3.   The Convenience Factors Under § 1404(a) Support Transfer

The first-to-file analysis may also encompass consideration of the "convenience factors" set forth in the transfer statute, 28 U.S.C. § 1404(a), including "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, ... the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). For the same reasons discussed in Section IV.C. above, the convenience factors under § 1404(a) support transfer of MG Premium and MG Billing's claims to the Utah Action.

## V.   CONCLUSION

For at least the foregoing reasons, Plaintiffs have not demonstrated that this Court has specific personal jurisdiction over DISH and thus the Court should dismiss this case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Alternatively, should the Court find that transfer would be "in the interest of justice," DISH respectfully requests that this Court exercise its discretion under 28 U.S.C. § 1631 and transfer this case to the District of Utah, or transfer this case under § 1404(a) to the District of Utah for the convenience of the parties.

1

2

Date: September 20, 2023                                   Respectfully submitted,

3

4

*/s/ G. Hopkins Guy, III*

5
                                                          **BAKER BOTTS L.L.P.**
6                                                         G. Hopkins Guy, III (SBN 124811)
                                                          hop.guy@bakerbotts.com
7                                                         Hien "David" Lien (SBN 313754)
                                                          david.lien@bakerbotts.com
8                                                         1001 Page Mill Road
                                                          Building One, Suite 200
9                                                         Palo Alto, CA 94304
                                                          Telephone: 650.739.7500
10                                                        Facsimile: 650.739.7699

11                                                        Ali Dhanani (*pro hac vice*)
                                                          ali.dhanani@bakerbotts.com
12                                                        Thomas B. Carter, Jr. (*pro hac vice*)
                                                          thomas.carter@bakerbotts.com
13                                                        Zacharias E. Shepard (*pro hac vice*)
                                                          zach.shepard@bakerbotts.com
14                                                        910 Louisiana
                                                          Houston, Texas 77002
15                                                        Telephone: 713.229.1108
                                                          Facsimile: 713.229.2808
16
                                                          Kurt M. Pankratz (*pro hac vice*)
17                                                        2001 Ross Avenue, Suite 900
                                                          Dallas, Texas 75201
18                                                        Telephone: 214.953.6584
                                                          Facsimile: 214.661.4584
19
                                                          *Attorneys for Defendants.*
20

21

22

23

24

25

26

27

28

DISH'S NOTICE OF MOTION AND MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. 3:23-CV-03674-EMC