# EXHIBIT A

```
                     UNITED STATES DISTRICT COURT

                FOR THE NORTHERN DISTRICT OF CALIFORNIA
                     _____

MG Freesites, Ltd.,            )
                               )    No. 3:23-cv-03674-EMC
          Plaintiff,           )
                               )
          vs.                  )    Phoenix, Arizona
                               )    November 16, 2023
DISH Technologies, L.L.C.,     )    1:38 p.m.
                               )
          Defendant.           )
_____)


          BEFORE:  THE HONORABLE EDWARD M. CHEN, JUDGE

             REPORTER'S TRANSCRIPT OF PROCEEDINGS

                 CASE MANAGEMENT CONFERENCE
```

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:

    VENABLE, LLP
    By: **Mr. Philip T. Sheng, Esq.**
        **Mr. William A. Hector, Esq.**
    101 California Street, Suite 3800
    San Francisco, CA 94111

    VENABLE, LLP
    By: **Mr. Ralph A. Dengler, Esq.**
    151 West 42nd Street, Ste. 49th Floor
    New York, NY 10036

    VENABLE, LLP
    By: **Mr. Jonathan L. Ko, Esq.**
    Intellectual Property
    2049 Century Park East, Ste. 2300
    Los Angeles, CA 90067

For the Defendant:

    BAKER BOTTS, L.L.P.
    By: **Mr. Ali N. Dhanani, Esq.**
        **Mr. Zacharias Shepard, Esq.**
    One Shell Plaza, 910 Louisiana Street
    Houston, TX 77002

    BAKER BOTTS, L.L.P.
    By: **Mr. George H. Guy, III, Esq.**
    1001 Page Mill Road
    Building One, Suite 200
    Palo Alto, CA 94304

**P R O C E E D I N G S**

1
2     COURTROOM DEPUTY: Court is calling the case MG
3  Freesites versus DISH Technologies, case number 23-3674.
4     Counsel, please state your appearance for the record,
5  beginning with the plaintiff.
6     MR. SHENG: Good afternoon, Your Honor. My name is
7  Philip Sheng with the law firm Venable, LLP. I represent the
8  MG Freesites plaintiffs, now known as Aylo, A-Y-L-O.
9     I'm joined here today, Your Honor, by my colleague
10 Mr. Ralph Dengler, also with Venable, from our New York office.
11     MR. DENGLER: Good afternoon, Your Honor.
12     THE COURT: All right. Good afternoon.
13     MR. SHENG: As well as Jonathan Ko from our Los
14 Angeles office, as well as Mr. Bill Hector from San Francisco.
15     THE COURT: Welcome. You can have a seat, if you'd
16 like.
17     And, Mr. Dhanani, you want to make your appearance.
18     MR. DHANANI: Good afternoon, Your Honor. This is Ali
19 Dhanani with the law firm of Baker Botts.
20     I have co-counsel with me, Zacharias Shepard, and
21 we're also trying to get Hopkins Guy on the line. And we
22 represent defendants DISH Technologies and Sling TV in this
23 case. Thank you.
24     THE COURT: All right. Thank you, counsel.
25     So let me first explain why I asked you to come. I

1  normally do these by Zoom, status conferences, but today is a
2  special day.  As you can look around the courtroom, you may not
3  be able to see it from where you are, Mr. Dhanani, but we are
4  being observed by a -- is it first year civil procedure class
5  -- at UC Law, whatever it's called now, UC Law San Francisco,
6  or whatever.  Used to be Hastings, but I can't use that word
7  anymore.  So they're here to watch and learn and criticize your
8  performances, and rate your performances.  And so I'm going to
9  do something that's a little unusual, I normally don't do, and
10 that is allow the attorneys to actually say something.
11         So this is a case management conference that we're
12 having.  And what I'd like to do, just so that people are on --
13 up to speed, is give each side a one-minute or a two-minute
14 summary of what this case is about from your perspective, like
15 a mini opening statement, and then we can talk about what we
16 need to talk about today.
17         So I guess plaintiffs can go first, since they're the
18 plaintiffs, although this is sort of a reverse case, but go
19 ahead.
20         MR. SHENG:  Thank you, Your Honor.
21         So this I think is a great case for us and for first-
22 year law students to attend, because it's an interesting one.
23 So we represent an entity called MG Freesites, now known as
24 Aylo Freesites, that is one of the world's largest and leading
25 providers of adult entertainment content, so websites such as

1 Pornhub.com, Bang Bros and other things, other websites like
2 that. Our client operates those websites.
3       We're here today, Your Honor, several months ago DISH
4 sent Aylo a letter informing Aylo that it is the owner of a
5 portfolio of patents directed to adaptive bitrate streaming, so
6 the streaming of video. And Aylo and -- DISH accused Aylo's --
7 broadly accused Aylo's technology, its streaming services, its
8 platform, its websites, of infringing DISH's patents. And so
9 it even sent Aylo some claim charts. So they were the claim
10 charts specifically accusing the Pornhub.com website and
11 mapping out DISH's patents to the Pornhub website.
12       And so, in response, Aylo filed a declaratory judgment
13 action in this court and -- specifically, Aylo Freesites, the
14 Aylo Freesites, which operates the Pornhub website, filed the
15 DJ action. And it expressly -- it identified the websites and
16 the patents that DISH had expressly identified in its pre-suit
17 correspondence.
18       Naturally, DISH -- I don't want to speak for opposing
19 counsel -- but I think they were not happy that they got DJ'd,
20 and not happy they got DJ'd here.
21       THE COURT: DJ being declaratory judgment.
22       MR. SHENG: Yeah. Thank you, Your Honor.
23       THE COURT: For those of you who haven't gotten to
24 that part of the chapter yet in your book.
25       MR. SHENG: So rather than file counterclaims in this

1  court asserting its family of ABR, adaptive bitrate streaming
2  patents in this court, rather than naming Aylo and Aylo's
3  related companies in this court, what DISH did was file a
4  separate lawsuit in the District of Utah, and it named two
5  other Aylo entities that fall under the same corporate umbrella
6  as Aylo Freesites.
7           It asserted patents -- one of the same patents at
8  issue here, as well as several additional patents that are all
9  part of the same patent family, very substantial --
10 substantially similar patent specifications.
11          If some of you are interested in patent law, this is a
12 good introduction, or I guess taste of patent law.
13          So asserting the same similar patents in Utah, as well
14 as accusing the same sort of technology, the Apple's HLS
15 streaming protocol.  So, basically, any website that uses the
16 HLS streaming protocol is what DISH believes infringes its
17 patents.
18          So, as I mentioned, instead of filing those
19 counterclaims here, it filed a separate lawsuit about a month
20 after Aylo filed in this court, which that's a lot.  I know
21 we're here just for a CMC statement, but Your Honor asked me to
22 provide some background.
23          So this was sort of -- becomes sort of a more complex
24 case now.  There is disputes over who filed first, what case
25 governs, whether this case -- this Court should retain

```
1   jurisdiction, enjoin, possibly, DISH from prosecuting in the
2   other action.  And we also have an outstanding motion to amend
3   the case caption.  There is a dispute over what the caption
4   should say.
5           So that's my longer than one minute --
6           THE COURT:  Good.  No, that's a nice entry.  I want to
7   give DISH a chance to respond.
8           So the situation now is we've got two pending
9   lawsuits, one in Utah, one here.  One was filed first here
10  seeking a declaratory relief that your client was not
11  infringing, that there was no liability, and now the suit that
12  was filed in Utah is the affirmative suit, the typical suit
13  where they -- with the patentholder claiming that there is an
14  infringement.  And so you can imagine that that creates some
15  issues, you know, what should we do?
16          So I'm going to let DISH counsel give their little
17  two-minute summary.
18          MR. GUY:  Yes, Your Honor.  Can you hear me?  My name
19  is Hopkins Guy.  Do you see me there?
20          THE COURT:  I can hear you and see you, yes.  Thank
21  you.
22          MR. GUY:  Wonderful.  Wonderful.  Sometimes the
23  technology works a little bit easier than others.  But, anyway,
24  let me -- let me respond with a two-minute summary.
25          First of all, DISH has been campaigning the patents in
```

1  the ITC against Peloton, Lululemon, and some others.  This
2  patent portfolio, which is called the adaptive bitrate
3  streaming portfolio, allows for streaming over the internet of
4  high-definition, high-quality video.  And instead of seeing the
5  typical spinning wheel when it freezes or locks up, instead the
6  resolution degrades slightly until the network congestion is
7  resolved, and then it continues on and goes back to high res.
8  And so this has been a very, very effective technology that
9  DISH owns.
10         DISH is typically known as a satellite television
11  provider, but with its acquisition of the Move Networks
12  technology in Salt Lake City, they actually own the leading
13  technology that is used now throughout the internet.
14         These patents have been battle tested in the ITC.
15  There was extensive litigation there.  And what has resulted in
16  that litigation was that the three inventors all live and
17  continue to reside in Salt Lake City, or their suburbs thereof;
18  that the first public use of the technology was in Utah.  The
19  first development of it, the first -- the CEO, the business
20  development all occurred out of Utah in Salt Lake City.  So all
21  of the operative facts of the invention and the development
22  occurred in Utah.
23         With respect to the DJ jurisdiction, there was no
24  fact, no -- nothing occurred in the state of California prior
25  to the DJ action.  And this is important, because all the

1   activity in the case, in the ITC case, had been in the ITC with
2   companies such as Peloton and Lululemon, and it involved the
3   state of Utah and all the resident witnesses there.
4            There was one patent prosecutor, Dan DeVos, who did
5   reside in, and still does reside in Silicon Valley.  And that
6   is the only witness out of all of that litigation that actually
7   has anything to do with the state of California.
8            So, as you -- as you've already heard, I think that
9   the audience and the Court should be advised that we have three
10  patent -- sorry, we have three motions currently pending.  One
11  of them challenges the DJ jurisdiction and personal
12  jurisdiction, as well as a motion to transfer under 1404(a)
13  forum non conveniens to the -- to Salt Lake City and the
14  district court in Utah.  Those are the current motions.
15           They have also filed a companion to that, which is to
16  enjoin the Utah case, that I think is unnecessary since the
17  preliminary injunction or any activity there has not really
18  progressed to a point.  We don't have a hearing date there.  So
19  the hearing date of our motion on December 4th will certainly
20  predate any activity that they would need to redress with such
21  an injunction.
22           We also believe it's highly improper, given the status
23  of the case, it's currently an eight patent case.  We believe
24  we're the first to file.  It may not be something the Court is
25  aware of, but there is a lot of adult content on the internet

1  that is free.  And the initial party that sued in the DJ
2  action, MG Freesites, basically does what the name implies, it
3  gives away information.  It gives away adult content for free.
4  And that's certainly not the target of a patent infringement
5  action.  The first parties that appear to be the premium sites
6  were the parties that were sued for the first time in Utah.
7          So what we see is an anticipatory filing which was
8  done for forum shopping.  I think students of civil procedure
9  will learn what forum shopping is.  This is a good example of
10 it.  And this is a situation in which MG Freesites has
11 attempted to nail down an early jurisdiction, I guess, that
12 they prefer.
13         So I think that that's a good opening, Your Honor.
14         THE COURT:  Yep.  Thank you.  Thank you.  I think that
15 sums up a lot of the points.  It doesn't cover everything.
16         I know you want to do a rebuttal, but --
17         MR. SHENG:  Yes.
18         THE COURT:  -- that was just to give you all a taste.
19 It's almost a perfect law school exam, final exam.  It's got
20 personal jurisdiction, first to file, conflicting issues,
21 propriety of an injunction, all sorts of stuff here, and the
22 role of declaratory judgment.  All that is very interesting.
23         Sufficed to say, this, as you just heard, these
24 motions are teed up for December 4th.  So if you're really
25 interested, come back on December 4th and you'll hear the full

1  360 degree hearing of these issues.

2          You wanted to say something, I'll give you two seconds
3  there to say.

4          MR. SHENG:  Mr. Guy mentioned forum shopping, which,
5  to me, wasn't well taken.  What Mr. Guy -- he mentioned a
6  patent assertion campaign that DISH had gone on.  They
7  certainly did go on a campaign, and they hit up every single
8  state in this country except Utah.  They went to this court in
9  2018.  They went to Eastern District of Texas, they went to
10 Delaware, they went to Washington, D.C.  They just filed in
11 SDNY.  And this is the first time they sued anyone in Utah.
12 And the reason being is Utah is well-known for its social
13 political stance on pornography.  There are laws prohibiting
14 it.  They don't even offer the websites in Utah, so no one even
15 in Utah can access the website, so it's -- I just wanted to
16 respond to that, Your Honor.

17         THE COURT:  Oh, I thought maybe it's good skiing in
18 Utah, that's why you all wanted it.

19         MR. SHENG:  I did have one more procedural question,
20 Your Honor.  I think I heard my friend on the other side say
21 that the motion to enjoin was not on calendar.  I think that's
22 what I heard him say.

23         THE COURT:  I think he said it was not well taken.

24         MR. SHENG:  No, I think he --

25         MR. GUY:  No, no, no.  I'll resolve that.  Both of

1  those are on calendar, both the motion -- for December 4th.  I
2  believe the only one that is not on calendar is the motion to
3  set the style of the case or substitute parties.
4          THE COURT:  All right.  So it is on calendar.
5          MR. SHENG:  Thank you, Your Honor.
6          THE COURT:  So it is all on calendar.
7          So, again, you're also seeing, to the class, good
8  advocacy on each part.  Everybody is trying to get in their
9  themes as well, even on short notice, so I commend counsel for
10 being able to do that on short notice.
11         So, in terms of what we have to do today, normally in
12 a case management conference I will start sending out
13 deadlines, and the parties had submitted some suggested
14 deadlines as to how we move the case along.  There is some
15 differences there.  One party wants to move a little quicker
16 than the other, which is not unusual.  And, as a case
17 management, I typically do set deadlines so that we have a time
18 frame and there is a bit of a fire lit to move things along.
19         But in view of the fundamental question here about
20 whether there is jurisdiction, whether this case remains in
21 this court, or whether it goes to Utah, or whether Utah comes
22 here, I think it's -- it makes sense to hear the motions first
23 and then set deadlines once we determine whether this case is
24 going to remain within this jurisdiction.  So I'm going to
25 defer that discussion, even though normally good case

1  management practice is to set deadlines, and I normally do.
2          The one thing I do want to raise, there was an
3  allusion to potential mediation.  I'm always interested in
4  alternative dispute resolution.  What I want to get a sense
5  from the parties -- and this may or may not be mooted by what
6  we do on the 4th -- but is there an interest in early mediation
7  in this case, or early ADR?
8          MR. SHENG:  Your Honor, I -- we would be amenable.  We
9  would need to confirm with our client, but it is -- it does
10 seem something -- it seems like something that we would be
11 amenable to.
12         THE COURT:  Okay.  And, Mr. Guy?
13         MR. GUY:  Your Honor, I think -- I think ADR, as you
14 might imagine, we've had to cross this bridge on this
15 particular portfolio a number of times.  We've used Judge
16 Infante in the past.  I'm sure you're well aware of him and his
17 fine work.  So we would be amenable to mediation before Judge
18 Infante, if that's amenable.
19         THE COURT:  All right.  So, in all likelihood, it
20 probably is going to take the form of private mediation, as
21 opposed to one or the other court-sponsored programs, correct?
22         MR. GUY:  Yes, Your Honor.
23         MR. SHENG:  I think so, Your Honor, yes.
24         THE COURT:  All right.  Okay.  So that could occur
25 irrespective of whether the case is here or in Utah or

```
 1   wherever.
 2           MR. SHENG:  Yes.  I think if the parties did do ADR,
 3   it would be -- it would need to be the whole -- both cases
 4   together.  It wouldn't be just to settle one case.
 5           THE COURT:  Yeah, right.  Wherever that case may be,
 6   or cases.  Okay.  All right.  Well, that's helpful to know.
 7           Between now and the 4th, is there anything that we
 8   need to -- I need to do?
 9           MR. SHENG:  Should the parties continue -- so the
10   parties had agreed to a schedule, as you saw, Your Honor, at
11   least with the near term dates.  Should the parties proceed
12   under that schedule, Your Honor?
13           THE COURT:  Well, we've got -- the next thing would
14   be -- you're talking about the disclosures?
15           MR. SHENG:  The disclosures have been made.  I believe
16   next week Aylo -- DISH is to serve its infringement
17   contentions.
18           THE COURT:  It seems to me, and I don't know what --
19   has Utah adopted our IP case management type schedule?
20           MR. SHENG:  Utah is in its early stages.  The judge
21   there recently recused -- was recently recused.  We have a new
22   judge.  All pending motions have been referred to a magistrate
23   judge.  Neither of the new judges have any familiarity with the
24   case, so it's uncertain when that case will start moving along,
25   Your Honor.
```

| | |
|---|---|
| 1 | THE COURT: Do they have -- |
| 2 | MR. GUY: Your Honor, if I might interject. I think |
| 3 | the question was whether or not they've adopted anything like |
| 4 | our patent local rules in the Northern District of California, |
| 5 | and the answer to that is that they have. |
| 6 | With respect to the other point, if we are -- we do |
| 7 | have an agreement on a schedule here, at least early in this |
| 8 | case, but given the Court's posture, I don't want to disclose |
| 9 | all of our requirements under PLR 3-1 and 3-2, and then if an |
| 10 | order comes down January 9th, we don't get their production. |
| 11 | So I'm happy to do it either way, either neither one |
| 12 | of us do it, that might delay things a little bit, but if I do |
| 13 | the disclosure of asserted claims, I would certainly expect to |
| 14 | get their document production and production of source code by |
| 15 | January the 9th, which I'd be very interested in seeing. And I |
| 16 | think that that would actually aid in mediation as well. So |
| 17 | I'm happy to do those first two dates, and given a December 4th |
| 18 | hearing date on the motion, I think that would work. |
| 19 | THE COURT: So any objection to going forward? I |
| 20 | mean, you're going have to do it at one or point or another, so |
| 21 | why not -- |
| 22 | MR. SHENG: Right. So I just want to make a proposal. |
| 23 | The proposal is that if DISH proceeds under the current |
| 24 | schedule, that regardless of how those cases turn out, maybe it |
| 25 | settles or -- even if it settles, we would need to provide our |

1  disclosures in January?  Is that the proposal?
2          THE COURT:  I think the proposal is to move forward
3  with the infringement contentions, disclosures, and then the
4  Aylo document productions, which are, at least according to
5  your schedule, is November 21st and January 9th.
6          Is that correct, Mr. Guy, those are the two deadlines?
7          MR. GUY:  Yes, correct.  Correct, Your Honor.
8          MR. SHENG:  That's acceptable, Your Honor.
9          THE COURT:  All right.  Why don't we -- I mean, that's
10 going to have to be done, even if you do settle it quickly, I
11 don't know if you're going to settle it by January 9th, if you
12 do, that's even great.  But whether it stays here, it's going
13 to advance to litigation wherever you are, so it seems to me we
14 should go ahead.
15         So I will adopt that and I will include that in the
16 minutes of this case management conference, as well as a note
17 that the parties are interested in pursuing a private
18 mediation.  And then we'll hear the merits of your competing
19 motions on the 4th.
20         MR. SHENG:  Thank you, Your Honor.
21         And, just for clarity, so the administrative motion to
22 amend the caption, is that something that Your Honor will take
23 under advisement, or is that something that Your Honor will
24 expect us to discuss at the December 4th hearing?
25         THE COURT:  I'll look at it.  I mean, I'll probably

1  just take it under advisement and I think I can rule on that.
2  If I feel I need discussion, we'll talk about it on the 4th.
3           MR. SHENG:  Great.  Thank you, Your Honor.
4           THE COURT:  All right.
5           MR. GUY:  Your Honor, if I may be heard on that last
6  point.  I'd ask that we have a hearing on the 4th.  One thing
7  that has occurred is that there are a number of MindGeek or MG
8  entities that, apparently, operate at either a loss or a
9  nonprofit status, and so -- and there has been a number of name
10 changes.  So we do not object to a pure name change, however,
11 what we believe is, is that the asset structure is being
12 changed as well.  And that's what we object to.
13          So we do believe -- and our investigation is ongoing
14 -- we would ask to add that to the December 4th hearing, and we
15 certainly intend to supplement with some record that we are
16 developing -- that is being developed out of some other
17 litigation in front of Judge Carney down in Central District in
18 Santa Ana Division.  We believe that would aid the Court in
19 making sure that as Judge Carney -- go ahead.
20          THE COURT:  So you want to be heard in regard to that
21 motion rather than just taking it under submission?
22          MR. GUY:  Yes.  Thank you.
23          THE COURT:  All right.  I'll consider that.  Thank
24 you.
25          MR. SHENG:  Thank you, Your Honor.

```
1            THE COURT:  All right.  Thank you, everyone.
2            MR. GUY:  Thank you.
3            (Proceedings concluded at 2:00 p.m.)
4                     *         *         *
```

UNITED STATES DISTRICT COURT

C E R T I F I C A T E

   I, CHRISTINE M. COALY, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

   I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

   DATED at Phoenix, Arizona, this 23rd day of November, 2023.


                    /s/ Christine M. Coaly_____
                    Christine M. Coaly, RMR, CRR