1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4

5    MG FREESITES LTD,                          Case No.  23-cv-03674-EMC

6                    Plaintiffs,               **ORDER GRANTING DEFENDANTS'**
                                               **MOTION TO DISMISS FIRST**
7          v.                                  **AMENDED COMPLAINT FOR LACK**
                                               **OF PERSONAL JURISDICTION AND**
8    DISH TECHNOLOGIES L.L.C., et al.,         **DENYING PLAINTIFFS' MOTION TO**
                                               **ENJOIN DEFENDANTS FROM**
9                    Defendants.               **PURSUING LATER-FILED ACTION**
                                               **AND MOTION TO AMEND CASE**
10                                             **CAPTION**

11

12                                             Docket Nos. 32, 33, 36

13

14                          I.      **INTRODUCTION**

15          On July 25, 2023, Plaintiff Aylo Freesites Ltd (f/k/a "MG Freesites Ltd") filed a complaint

16   seeking a declaratory judgment that its website, Pornhub.com, does not infringe on three patents

17   exclusively owned by Defendant DISH Technologies L.L.C. ("DISH") and exclusively licensed to

18   Defendant Sling TV L.L.C. ("Sling").  Docket No. 1.  On August 22, 2023, in the District of Utah,

19   Defendants filed an action against Aylo Premium Ltd (f/k/a "MG Premium Ltd"), Aylo Billing

20   Ltd (f/k/a "MG Billing Ltd"), Sonesta Technologies and Yellow production, alleging infringement

21   of six patents, one of which overlaps with the original complaint here.  *DISH Tech., L.L.C. v. MG*

22   *Premium Ltd, et al.*, 2:23-cv-00552 (D. Utah) ("Utah Action"). On September 6, 2023, Plaintiff

23   Aylo Freesites Ltd amended the complaint pending before this Court, adding Plaintiffs Aylo

24   Billing Ltd and Aylo Premium Ltd, the five additional patents in Defendants' Utah Action, and the

25   additional websites in Defendants' Utah Action.  Docket No. 29 ("FAC").

26          Now pending before this Court are: (1) Defendants' motion to dismiss the amended

27   complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or

28   alternatively, to transfer to the District of Utah under 28 U.S.C. § 1404(a), Docket No. 33 ("D's

Mot."); (2) Plaintiffs' motion to enjoin Defendants from pursuing the later-filed action, the Utah Action, Docket No. 36 ("Pl's Mot. to Enjoin); and (3) Plaintiffs Motion to Amend the Case Caption, Docket No. 32 ("Pl's Mot. to Amend."). Because this Court lacks personal jurisdiction over Defendants, the Court **GRANTS** Defendants' motion to dismiss. Plaintiffs' motions to enjoin and amend the case caption are **DENIED AS MOOT.**

## II.   FACTUAL & PROCEDURAL BACKGROUND

A.   Factual Background

Aylo Freesites Ltd and Aylo Premium Ltd are private limited companies organized and existing in the Republic of Cyprus. FAC ¶¶ 7, 9. Aylo Billing Ltd is a private limited company organized and existing in Ireland. *Id.* ¶ 10. Collectively, the "Aylo Entities" (Aylo Freesites Ltd, Aylo Premium Ltd, and Aylo Billing Ltd) operate a number of adult streaming service websites (the "Accused Websites").[1] *Id.* at 1, ¶¶ 2-3. Defendants DISH and Sling are both incorporated and have principal places of business in Englewood, Colorado. FAC ¶¶ 15, 17. DISH is the sole owner of all rights, title, and interest in the Patents-In-Suit and Sling is the exclusive licensee of, and has substantial rights in, the Patents-In-Suit.[2] *Id.*

Earlier this year, DISH Network's counsel, who is based in New York, sent two email communications to "MindGeek Montreal". *Id.* ¶¶ 3-4. MindGeek refers to MG Freesites Ltd n/k/a Aylo Freesites Ltd. FAC ¶ 66. The emails asserted that Mind Geek websites which practices HTTP Live Streaming ("HLS") infringed several of DISH's "adjustable bit rate" streaming patents. *Id.* ¶¶ 3-4, 6, 62-66; Docket Nos. 29-9, 29-19; D's Mot. at 4. The claim charts

---

[1] Pornhub.com, pornhubpremium.com, redtube.com, redtubepremium.com, youporn.com, youporngay.com, youpornpremium.com, tube8.com, gaytube.com, brazzers.com, digitalplayground.com, men.com, babes.com, seancody.com, transangels.com, realitykings.com, mofos.com, twistys.com, whynotbi.com, fakehub.com, faketaxi.com, lesbea.com, danejones.com, sexyhub.com, iknowthatgirl.com, milehighmedia.com, bangbros.com.

[2] Claim 10 of United States Patent No. 10,469,555 (the "'555 Patent"); Claim 1 of United States Patent No. 10,757,156 (the "'156 Patent"); Claim 14 of United States Patent No. 11,470,138 (the "'138 Patent"); Claim 16 of United States Patent No. 10,469,554 (the "'554 Patent"); Claim 1 of United States Patent No. 11,677,798 (the "'798 Patent"); Claim 8 of United States Patent No. 9,407,564 (the "'564 Patent"); Claim 22 of United States Patent No. 10,951,680 (the "'680 Patent"); Claim 1 of United States Patent No. 8,868,772 (the "'772 Patent").

United States District Court
Northern District of California

attached to those communications purported to show that streaming services and products used on Pornhub.com infringed at least the '555 Patent, the '156 Patent, and the '138 Patent.  *Id.*; Docket Nos. 29-10, 29-11, 29-12.  The parties scheduled a call on July 26, 2023, to discuss these claim charts.  *Id.* ¶ 75.  Before the scheduled call, on July 25, 2023, Plaintiff Aylo Freesites Ltd (then MG Freesites) filed this original complaint seeking a declaratory judgment that its website Pornhub.com does not infringe those three patents.  Docket No. 1 ¶ 2.

Approximately one month later, on August 22, 2023, Defendants filed a lawsuit in the District of Utah against Aylo Premium Ltd, Aylo Billing Ltd, MG Billing Ireland Ltd[3], Sonesta Technologies, Sonesta Media, and Yellow Production.  Utah Action.  The Utah Action alleged 18 adult websites (but not Pornhub.com) operated by Aylo Premium Ltd and Aylo Billing Ltd infringed the same '138 Patent at issue in this original complaint, as well as five additional patents: the '772 Patent, the '564 Patent, the '554 Patent, the '680 Patent, and the '798 Patent. Utah Action ¶¶ 4-5, 16-21, 50-212.  Approximately two weeks later, on September 6, 2023, Plaintiff Aylo Freesites Ltd amended this complaint to add Plaintiffs Aylo Premium Ltd and Aylo Billing Ltd, 26 websites, including the 18 websites accused in the Utah Action, and the five additional patents at issue in the Utah Action.  *Compare* Docket No. 1 ¶ 2, *with* FAC ¶ 2, *and* Utah Action ¶¶ 4, 16-21.  After Plaintiffs' amendment, both this action and the Utah Action involve all three Aylo Entities, Defendants DISH and Sling, 19 of the same adult websites, and six of the same Patents-In-Suit.  *Compare* FAC, *with* Utah Action.

Plaintiffs allege Defendants previously sued another entity, Jadoo TV Inc. ("Jadoo") in this district asserting the '564 Patent (one of the Patents-In-Suit) among other patents.  *Id.* ¶ 23. Plaintiffs allege that action went on for nearly three years and the parties ultimately entered into a final consent judgment and stipulated injunction, though no exclusive licensing agreement was entered into.  *Id.* ¶ 32.  Further, Defendants retained a Northern California-based attorney for the present litigation.  *Id.* ¶ 39.  This same attorney served as lead counsel for Defendants in five other litigations (in Texas and Delaware) asserting the Patents-In-Suit or related patents against other

---

[3] Plaintiffs allege MG Billing Ireland Ltd does not exist.  FAC ¶ 89.

1    entities. *Id.* ¶ 40.  Plaintiffs also allege that Defendants advertise their satellite TV packages to

2    consumers in this district.  *Id.* ¶¶ 42, 47.  Further, that Defendants have engaged with at least

3    twelve authorized retailers within 100 miles of this courthouse to sell and offer to sell their

4    products. *Id.* ¶ 45; Docket No. 29-18.

5    B.       Procedural Background

6            Pending before the Court is Defendants' motion to dismiss the First Amended Complaint

7    for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or alternatively, to

8    transfer under 28 U.S.C. § 1404(a).  D's Mot.  Also pending is Plaintiffs' motion to enjoin

9    Defendants from pursuing the action Defendants initiated in the District of Utah.  P's Mot.

10   Lastly, Plaintiffs filed an administrative motion to amend the case caption to include the later-

11   added Plaintiffs and to account for the re-branding of the "MG" entities to "Aylo."

12   Docket No. 32.

### III.     LEGAL STANDARD

14           Under Federal Rule of Civil Procedure 12(b)(2), a court must dismiss or transfer an action

15   when it does not have personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  Where, as

16   here, the motion to dismiss is based on written materials, the plaintiff need only make a prima

17   facie showing that the defendant is subject to personal jurisdiction.  *Ranza v. Nike, Inc.*, 793 F.3d

18   1059, 1058 (9th Cir. 2015).  Regarding the standard for challenges of fact, the Court must accept

19   uncontroverted allegations in the plaintiff's complaint as true and resolve all disputed facts in

20   favor of the plaintiff.  *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th

21   Cir. 2010).

### IV.     DISCUSSION

23   A.       Personal Jurisdiction

24           Defendants move to dismiss the First Amended Complaint pursuant to Federal Rule

25   12(b)(2) on the grounds that the Court lacks personal jurisdiction over Defendants.  D's Mot. at 7-

26   8.  Federal Circuit law governs personal jurisdiction in patent cases. *See Breckenridge Pharm.,*

27   *Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) ("[t]he issue of personal

28   jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law' and

United States District Court
Northern District of California

1    thus governed by Federal Circuit law regarding due process") (internal citations omitted).  Under

2    Federal Circuit law, personal jurisdiction over a nonresident defendant is proper if the forum

3    state's long-arm statute permits jurisdiction and the assertion of jurisdiction does not violate due

4    process.  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947, 961 (N.D. Cal. 2020).

5    California's long-arm statute, Cal. Code Civ. P. § 410.10, extends to the limits of federal due

6    process requirements.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir.

7    2004).  Due process requires a defendant have certain minimum contacts with the forum state such

8    that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial

9    justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Further, there are two types of

10   personal jurisdiction: "general" and "specific."  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.,*

11   *San Francisco Cnty.*, 582 U.S. 255, 262 (2017).[4]  Each are addressed in turn below.

12        1.    General Jurisdiction

13        The general rule is that general jurisdiction is only proper over a corporation in its state of

14   incorporation or in the state of its principal place of business.  *See, e.g.*, *Goodyear Dunlop Tires*

15   *Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  There is an exception to this rule, allowing

16   for general jurisdiction over a defendant outside of the state of incorporation or principal place of

17   business, but only where business contacts within the state are so "continuous and systematic" as

18   to render the corporation "at home" in the forum state.  *Id.*  But this exception is a narrow one.

19   *See, e.g.*, *id.*  Indeed, in recent years the Supreme Court has only sanctioned application of the

20   exception in one instance: *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952).

21   *Goodyear Dunlop Tires Operations*, 564 U.S. at 927-29.   In *Perkins*, a corporation was

22   technically incorporated and headquartered in the Philippines, but for all intents and purposes,

23   moved its headquarters to and conducted all of its operations out of Ohio during World War II—

24   rendering it "at home" in that state.  *See id.* (discussing *Perkins,*  342 U.S. 437).  Since *Goodyear*

25   *Dunlop Tires Operations*, the Supreme Court has, if anything, narrowed the scope of the

26

27   [4] Where general jurisdiction exists over a defendant the district court has power to adjudicate all
     matters over the defendant. *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  On the other hand, where
28   specific jurisdiction is the basis of jurisdiction, the court has power to adjudicate only disputes
     arising out of the contacts by defendants to the forum state.  *See id.*

United States District Court
Northern District of California

1    exception.  *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (reaffirming *Goodyear*

2    *Dunlop Tires* but clarifying that general jurisdiction is not to be premised upon placing a product

3    into stream of commerce where product arrives in forum state); *BNSF Ry. Co. v. Tyrrell*, 581 U.S.

4    402, 413 (2017) (emphasizing that exercise of general jurisdiction beyond principal place of

5    business or state of incorporation is an "exceptional case").

6         In the present case, both Defendant corporations, DISH Technologies L.L.C. and Sling TV

7    L.L.C., are incorporated and headquartered in Colorado.  FAC ¶¶ 15, 17.  Accordingly, the

8    paradigmatic circumstances warranting application of general jurisdiction are not found here; if

9    general jurisdiction is to be found, it must be under the rare exceptional facts.  *See Goodyear*

10   *Dunlop Tires Operations*, 564 U.S. at 919.

11        No such facts are alleged here.  Plaintiffs do not allege that the Defendant corporations

12   engage in the sort of extensive operations within forum state so as to warrant application of the

13   exception; Defendants contacts with California are (a) not so extensive such that they are

14   considered "at home" in the state; and (b) are not unique to the forum state compared to other

15   states in the country.  *See generally* FAC.  Specifically, though Plaintiffs allege that DISH

16   advertises and offers to sell products in the state, and have engaged with authorized retailers

17   within the district, FAC ¶¶ 41-47, these allegations do not even approach the sort of operations at

18   issue in *Perkins*, 342 U.S. 437, that would make application of the exception appropriate.  *See*

19   *Daimler AG,* 571 U.S. at 128 (injecting products into the stream of commerce not sufficient to

20   confer general jurisdiction).  Indeed, Plaintiffs have not alleged that Defendants engage in any

21   conduct unique or peculiar to the state of California different from their engagement in commerce

22   throughout the country.  It would be improper to subject a corporation to general jurisdiction in

23   every state it does business.  *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in

24   many places can scarcely be deemed at home in all of them.");  *see also BNSF Ry. Co.*, 581 U.S. at

25   413 (finding railroad company not "at home" in a state for laying down miles of railroad track

26   there and employing state citizens because corporation was not doing something in the forum state

27   that it was not doing elsewhere); *Campbell Pet Co.*, 542 F.3d at 884 (general jurisdiction is

28   improper where defendants' website is not "specifically directed at Washington, but instead is

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    available to all customers throughout the country who have access to the Internet[.]") (internal

2    quotations omitted).  Accordingly, allegations asserted in Plaintiffs' First Amended Complaint

3    provide an insufficient basis to find general jurisdiction over the Defendants.

4         Cases cited by Plaintiffs do not warrant a different result.  *See* Opp'n at 16-17 (citing *LSI*

5    *Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("Based on Hubbell's

6    millions of dollars of sales of lighting products in Ohio over the past several years and its broad

7    distributorship network in Ohio, we find that Hubbell maintains 'continuous and systematic'

8    contacts with Ohio.")); *Synopsys, Inc. v. Ricoh Co., Ltd.*, 343 F. Supp. 2d 883, 887 (N.D. Cal.

9    2003) (finding general jurisdiction over defendant with "significant business presence in the

10   forum").  These cases were decided prior to the Supreme Court's holding in *Goodyear Dunlop*

11   *Tires Operations* and its progeny, which narrowed the scope of general jurisdiction; the mere fact

12   that a corporation has a large number of sales or engages in distribution in the forum state, among

13   others, is no longer sufficient to support its application.  *See, e.g.*, *Daimler AG*, 571 U.S. at 128

14   (finding "continuous and systematic" business contacts may not be premised upon placing a

15   product into stream of commerce where product arrives in forum state); *BNSF Ry. Co.*, 581 U.S.

16   at 413 (emphasizing narrowness of the exception to general rule for general jurisdiction over

17   corporations).  Rather, as explained above, the corporation must be engaging in business so

18   extensive in the state as to be akin to being headquartered in that state.  *See Goodyear Dunlop*

19   *Tires Operations, S.A.*, 564 U.S. at 927-28 (citing *Perkins,* 342 U.S. 437).  Accordingly, the Court

20   lacks general jurisdiction over Defendants.

21        2.    <u>Specific Jurisdiction</u>

22        In assessing whether specific jurisdiction is proper, the court first determines "whether the

23   connection between the forum and the episode-in-suit could justify the exercise of specific

24   jurisdiction," and then at the second step the court considers "several additional factors to assess

25   the reasonableness of entertaining the case."  *Jack Henry & Assocs., Inc. v. Plano Encryption*

26   *Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018) (citing *Daimler AG v. Bauman*, 571 U.S. 117,

27   139 n.20 (2014)).  In the first step of the analysis the court assesses: (1) whether the defendant

28   "purposefully directed" its activities at residents of the forum; and (2) whether the claim "arises

out of or relates to" the defendant's activities within the forum. *Jack Henry & Assocs., Inc.*, 910 F.3d at 1204 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)). This is known as the "minimum contacts" portion of the test. *Jack Henry & Assocs., Inc.*, 910 F.3d at 1204. At the second step, i.e., the "reasonableness" step, the court considers factors outlined by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).[5] *Id.* Because the Court finds that there are not sufficient minimum contacts to warrant the exercise of personal jurisdiction here, the Court addresses, primarily, only the first step of the analysis herein.

In the context of a declaratory judgment of non-infringement in a patent case, the defendant patentee's contacts with the forum state must "relate in some material way to the enforcement or the defense of the patent" to find minimum contacts. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008). The Federal Circuit most commonly recognizes such enforcement or defense of a patent as sufficient to confer specific jurisdiction: (1) where a defendant patentee enters into an exclusive licensee agreement with a forum resident, transferring rights and responsibilities of defending and enforcing the patent to the resident licensee, *see id.* at 1336; *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995);[6] and (2) where a defendant patentee has engaged in prior patent enforcement actions within the state, *see Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) (recognizing

---

[5] These factors are: (1) burden on the defendant; (2) interests of the forum state in the litigation; (3) interest of the plaintiff in litigating the matter in that state; (4) whether the allowance of jurisdiction serves interstate efficiency; and (5) whether the allowance of jurisdiction serves interstate policy interests. *Burger King Corp.*, 471 U.S. at 476-77.

[6] Not all exclusive licensee agreements are sufficient to satisfy the minimum contacts test, however. The agreement at issue must shift obligations to enforce or defend the patent at issue. *See Avocent*, 552 F.3d at 1336; *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017) (explaining that "the mere existence of an exclusive license does not support a finding of specific jurisdiction," but "a license that obligates the patent holder to defend or enforce the patent may be sufficient to establish specific personal jurisdiction, because a declaratory judgment action typically arises from the patent holder's actions to enforce or defend its patent in the forum"); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (declining to find specific personal jurisdiction over a patentee with thirty-four non-exclusive licensees selling the patented product in the forum state because "none of [the patentee's] licenses requires it to defend or pursue infringement actions involving the [relevant] patent, nor requires [the patentee] to be so nearly involved with its licensees as was the case with [the exclusive licensee agreement in *Akro*]").

United States District Court
Northern District of California

a prior enforcement action may warrant exercise of specific jurisdiction).

On the other hand, the Federal Circuit has made clear, that "[c]ommercialization efforts, i.e., sales of products in the state are not relevant to the analysis." *See id.* at 1335. Other extra-judicial enforcement efforts, however, may be relevant. *See New World Int'l, Inc.*, 859 F.3d at 1038. For example, sending cease and desist letters to the forum at issue, directed to a purported infringer located in that district, is often insufficient on its own to constitute minimum contacts but may support finding personal jurisdiction in conjunction with additional facts. *Id.* ("While the act of sending cease and desist letters is in-sufficient by itself to trigger a finding of personal jurisdiction, other activities by the defendant, in conjunction with cease-and-desist letters, may be sufficient. One such activity that this court has recognized may meet the minimum contacts requirement is the grant of an exclusive license to a licensee that resides or regularly does business in the forum."); *see also Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1347 (Fed. Cir. 2003) (finding sufficient minimum contacts premised upon multiple threats of enforcement action being sent to the plaintiff company's California address, hiring of a California attorney, and having a representative of the patentee physically visit plaintiff's facilities in California to demonstrate the infringing nature of its products and to threaten suit).

Here, there is no allegation that the Defendant corporations have entered into an exclusive licensee agreement with a resident of the forum state, California. *See generally* FAC. To the contrary, Sling TV L.L.C. is the exclusive licensee of, and has substantial rights in, the Patents-in-Suit—but Sling TV is headquartered and incorporated in Colorado. FAC ¶ 17. Accordingly, this avenue to find minimum contacts is not applicable here.

Rather, Plaintiffs focus upon the fact the Defendants have initiated a prior enforcement action in this district in asserting that minimum contacts have been established. Opp'n at 11-12. Plaintiffs also point to the fact that Defendants have engaged lawyers based in the Northern District of California and that Defendants have sued companies registered to do business in California in arguing minimum contacts exist here. *Id.* at 12-13. Each issue is addressed below.

//

//

United States District Court
Northern District of California

1

     a.     <u>Prior Enforcement Actions in the Forum</u>

2        Defendants are alleged to have initiated a single, prior enforcement activity in this forum,

3   specifically *DISH Technologies L.L.C. and Sling TV L.L.C. v. Jadoo TV, Inc.*, No. 5:18-cv-05214-

4   EJD, (N.D. Cal.) (the "Jadoo litigation").  Opp'n at 4-5.  In that action, DISH and Sling sued a

5   small, five-employee company incorporated and doing business in California, Jadoo, for

6   infringing five of Defendants' patents involving the streaming of video content.  *See* Jadoo

7   Litigation, Docket No. 1 ("Jadoo Complaint") ¶¶ 7-12.  Plaintiffs argue this satisfies the minimum

8   contacts test.

9        As Defendants note, in the majority of cases where a prior enforcement action is the basis

10   for jurisdiction the defendant had litigated multiple (e.g., six or more) infringement actions for

11   related patents in the district.  *See, e.g.*, *Apple Inc.*, 506 F. Supp. 3d at 962 ("Defendant has

12   purposefully directed its enforcement activities towards the forum state by . . . litigating six

13   lawsuits on claims of infringement of patents in the same family in the Northern District of

14   California…"); *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083,

15   1099 (N.D. Cal. 2013) (Defendant "has engaged in judicial patent enforcement with respect to the

16   patents at issue or a related patent in this District multiple times…it has initiated six patent

17   infringement lawsuits in the District"); *Twitter, Inc. v. VoIP-Pal.com, Inc.*, 2020 WL 7342733, at

18   *10–11 (N.D. Cal. Dec. 14, 2020) (Koh, J.) (applying *Avocent*, 552 F.3d at 1332, and finding

19   litigation of six lawsuits regarding related patents demonstrated purposefully directed enforcement

20   activities in the forum).  Indeed, in finding personal jurisdiction, courts emphasize that the

21   patentee *repeatedly* made use of the district courts in the forum in finding sufficient minimum

22   contacts.  *Apple Inc.*, 506 F. Supp. 3d at 963; *ActiveVideo Networks, Inc.*, 975 F. Supp. 2d at 1099.

23        But this does not end the inquiry.  The Federal Circuit has recognized that a single, prior

24   enforcement action in the same forum involving the same patent may under some circumstances

25   amount to minimum contacts in the forum, even where, as is the case here, the parties did not

26   overlap from one suit to the next.  *See Autogenomics,* 566 F.3d at 1020.  Though, as discussed

27   below, the Federal Circuit precedent on this issue is not without ambiguity.

28        In *Viam Corporation v. Iowa Export-Import Trading Company*, the defendant patentee

United States District Court
Northern District of California

holder brought a single, prior enforcement action in the same district, regarding the same patent at issue in the then-current suit.  84 F.3d 424, 430 (Fed. Cir. 1996).  But this was not the basis of finding minimum contacts in that case.  *See id.* 430.  Rather, the *Viam* court found that the defendant patentee had sufficient minimum contacts with the forum state based upon commercialization efforts by the defendant in that forum.  *See id.* at 428-29.  The *Viam* court considered the prior enforcement action in assessing the second step of the specific jurisdiction analysis, i.e., the reasonableness prong.  *Id.* at 429-30.  The court explained that it would not be unduly burdensome to require the defendant to litigate in California given that the defendant has previously "found a way to shoulder successfully the burden of litigating in California" as evidenced by the prior enforcement action.  *Id.* at 430.

The Federal Circuit has since made it clear that commercialization efforts are *not* a sufficient basis to find minimum contacts in the context of patent infringement cases; this aspect of *Viam* has been overruled.  *See Avocent*, 552 F.3d at 1335.  In so finding, the Federal Circuit addressed the conflicting approach in *Viam* and effectively reframed *Viam*'s holding.  Specifically, in *Avocent*, the Federal Circuit held: "[w]hat the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because the federal patent laws do not create any affirmative right to make, use, or sell anything."  *Id.*  The court next reexamined *Viam* and explained "[i]n that case, the patentee's relevant jurisdictional activity included enforcement proceedings involving the same patent in the same court against other alleged infringers—a significant contact with the forum materially related to the enforcement of the relevant patent."  *Id.* at 1338-39.  And in *Autogenomics*, the Federal Circuit reaffirmed the core holding in *Avocent*, that "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee."  566 F.3d at 1020.  As to *Viam*, the court explained:

//

//

//

> The dissent suggests that this reading of *Avocent* renders it in conflict with other precedent of this court. The court in *Avocent*, however, considered and distinguished the very precedent that the dissent cites. 552 F.3d at 1334–35, 1338–39 (discussing *Viam*, *Campbell Pet*, and *Red Wing Shoe* ). In *Viam*, for example, where this court held personal jurisdiction existed, the patentee had sued another infringer in the same court on the same patent—enforcement efforts in the forum. 84 F.3d at 430.

*Id.*   This language strongly suggests that a single, prior enforcement action may constitute sufficient minimum contacts with the forum state at least in some circumstances, even where the parties accused of infringement do not entirely overlap—as was the case in *Viam*.

However, the Federal Circuit has not delved any further into this analysis.  It has not examined for instance, the requisite overlap between patents, parties, or operative facts at issue in comparing the current suit relative to the prior action.[7]  The level of overlap is pertinent because, at bottom, the inquiry regarding minimum contacts focuses upon whether there is sufficient relatedness between the activities directed at the forum by defendant (here, the prior enforcement action) and the case at bar.  *See, e.g.*, *Avocent*, 552 F.3d at 1332-33 ("The relevant inquiry for specific personal jurisdiction purposes ... [is] to what extent has the defendant patentee 'purposefully directed such enforcement activities at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'") (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed.Cir.2006)). Accordingly, the similarity of patents, parties, and operative facts would seem consequential.

Here, unlike in *Viam*, there is only partial overlap in the patents at issue in the two actions. Specifically, there were five patents at issue in the Jadoo litigation, and in the present action, Plaintiffs seek a declaration that its websites do not infringe eight patents. *Compare* Jadoo Complaint ¶ 12 (alleging infringement of the '444, '156, '668, '564, and '783 patents) *with* FAC

---

[7] *Viam* does not provide helpful rationale, because the court there focused upon commercialization activities in finding sufficient minimum contacts. 84 F.3d at 428-29.  *Avocent* and *Autogenomics* are also not helpful on this point, as the court denied finding specific jurisdiction in each, in part because no prior enforcement actions had been pursued at all by the defendants; the court did not elaborate on the necessary characteristics of the prior action.  *See Avocent*, 552 F.3d at 1339 ("But Avocent has made no allegation that Aten International has attempted to enforce these patents in any Alabama court."); *Autogenomics*, 552 F.3d at 1015-16 (discussing jurisdictional facts).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   at 42 (seeking declaratory judgment regarding the '555 patent, '156 patent, '138 patent, '554

2   patent, '798 patent, '564 patent, '680 patent, and '772 patent).  There is only one patent/claim pair

3   that overlaps amongst the Jadoo and current litigation: the '564 patent (and specifically, claim 8).[8]

4   *Compare* Jadoo Complaint ¶¶ 112-19 *with* FAC ¶¶ 173-84.  Thus, *Neuralstem, Inc. v. StemCells,*

5   *Incorporated*, cited by Plaintiffs, is distinguishable. 573 F. Supp. 2d 888, 898 (D. Md. 2008)

6   (conferring specific jurisdiction based on single prior enforcement action involving not only the

7   same patents, but the same parties and the same set of operative facts).  Here, unlike in

8   *Neuralstem*, Defendants' previous enforcement action in this district was against Jadoo, who is not

9   related to any of the parties herein, and unlike in *Neuralstem*, the operative facts in Jadoo are not

10   the same as in the instant case.  Namely, Jadoo sold set-top boxes wherein foreign video content

11   could be watched by the user.  Jadoo Complaint ¶¶ 27-28.  The set-boxes were accused of

12   incorporating a rate-adaptive streaming method infringing upon DISH's patented streaming

13   technology, as exemplified by the Jadoo set-box file content.  *Id.* & Ex. J (exemplary claims

14   chart).  The case at bar addresses the method of streaming videos on Plaintiffs' adult websites,

15   thus putting different facts in issue regarding the accused technology (i.e., the source code and

16   streaming methods of Plaintiffs' websites compared to the Jadoo set-box file content).  *See*

17   *generally* FAC.  Thus, the operative facts and accused products differ.  Accordingly, the

18   relatedness between the Jadoo litigation and the present action is limited, and this counsels against

19   a finding of sufficient minimum contacts here. *See, e.g.*, *Avocent*, 552 F.3d at 1332-33 (discussing

20   import of relatedness into the minimum contacts analysis).

21        There is another fact here that counsels against a finding of specific jurisdiction.

22   Defendants assert, without contradiction by the Plaintiffs herein, that they had no choice but to

23   bring the Jadoo litigation in California.  Jadoo was a small company of under ten people residing

24   in California, incorporated and solely operating in this state; there was nowhere else where

25   personal jurisdiction over Jadoo could be found.  The lack of a choice of forum further militates

26

27   [8] Both actions also involved the '156 patent but the Jadoo litigation involved claim 15 of the
     patent, whereas this action involves claim 1 of that patent.  *Compare* Jadoo Complaint ¶ 58 *with*
28   FAC at 42.

13

against a finding of specific jurisdiction based on the Jadoo litigation.  This is because an overarching principle in the minimum contacts test is whether conferring jurisdiction would offend "traditional notions of fair play and substantial justice."  *See Int'l Shoe Co.*, 326 U.S. at 316.  Where the activities directed at the state are not a volitional choice of forum, finding minimum contacts based on such activity would seem inconsistent with basic principles of fairness.  *See, e.g.*, *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (explaining that where a defendant is not "in the forum state of their own volition" such an act would not constitute "avail[ing] themselves of the forum under the minimum contacts test"); *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 716 (1st Cir. 1996) ("The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person.") (citing *Burger King*, 471 U.S. at 475); *Smugmug, Inc. v. Virtual Photo Store LLC*, 2009 WL 3833969, at *4 (N.D. Cal. Nov. 16, 2009) (finding prior enforcement action did not confer specific jurisdiction because case was transferred to the forum over defendant's objection).

For this reason, *Pro Sports Incorporated v. West*, 639 F. Supp. 2d 475, 482 (D.N.J. 2009) also does not counsel a different result.[9]  In *Pro Sports Incorporated*, the New Jersey district court found that minimum contacts were established because the defendant, West, initiated a single prior enforcement action in the same district court to assert the same patent at issue in the current suit (the '966 patent) against three corporations not party to the *Pro Sports Incorporated* suit.  *Id.* at 480-82.  However, the court rested its holding in part on the fact that West chose to initiate the action in New Jersey, even though West had the option to bring suit elsewhere as at least one defendant was a resident of Florida.  *Id.* at 481-82.  Again, Defendants here had no choice but to bring the action against Jadoo in this forum.

In light of the limited relatedness between the Jadoo litigation and this action and the lack of volition on the DISH's part in bringing that prior enforcement action against Jadoo in this

---

[9] The parties do not cite this case in their briefs.  However, this case should be considered, as the court there exercised specific jurisdiction on the basis of a single prior enforcement action with dissimilar parties.

United States District Court
Northern District of California

district, the Court finds that the Jadoo litigation is not sufficient to establish minimum contacts by Defendants in the present suit.[10]

> b. <u>Hiring of Attorneys</u>

Plaintiffs also argue jurisdiction is appropriate because Defendants hired California attorneys to prosecute infringement actions including the Jadoo litigation and other litigations alleging infringement in Delaware and the Eastern District of Texas.  FAC ¶¶ 39-41; Opp'n at 12.

The hiring of attorneys may be relevant to the analysis but in the present case this does not satisfy the minimum contacts requirement absent additional substantial enforcement activities. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021) (explaining that hiring of attorneys can be relevant to the minimum contacts inquiry) (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351 (Fed. Cir. 2003)).  Indeed, where the Federal Circuit has recognized specific jurisdiction, the hiring of attorneys in the district was but one factor of several compounding factors making jurisdiction appropriate.  *Elecs. for Imaging, Inc.*, 340 F.3d at 1347. Specifically, in *Electronics for Imaging*, a patent invalidity case, the defendant corporation had repeatedly threatened to bring an infringement action against the plaintiff who was sitting in the forum state.  *Id.*  The defendant also hired a California attorney to reach out to the plaintiff, still

---

[10] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017), cited by both parties, does not change the outcome.  There, the Court held that "reside" as used in the statute dictating appropriate venue in a patent infringement case is the company's state of incorporation only.  *Id.* (citing 28 U.S.C. § 1400(b) ("[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.")).  Defendants cite this case to show that California was the only forum where Jadoo could be sued—which Plaintiffs do not contest.  Plaintiffs argue that this case does not help Defendants, because under the logic of this case any entity could only be sued in its state of incorporation—undermining the idea that a plaintiff ever has a choice of where to sue for infringement.  *See* Opp'n at 12-13.  But the state of incorporation is not the only place an accused infringer can be sued.  The second half of the venue statute contemplates that venue is also proper, aside from the state of residence, "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  This alternative avenue for venue is exemplified by Plaintiffs' own supplemental filing, Docket No. 65, pointing to a case where venue was deemed proper over a related DISH entity accused of infringement in California, notwithstanding that DISH is not incorporated in the state.  *See Entropic Communications, LLC v. DISH Network Corporation, et al.*, No. 2:23-cv-01043 (C.D. Cal. Jan. 10, 2024) Docket No. 269 at 1 ("Where, as here, the defendant does not reside in the district for venue purposes, the plaintiff can allege . . . that the defendant has committed acts of infringement and has a regular and established place of business in the district.") (internal citations omitted).  Thus, Plaintiffs' argument does not diminish the significance of the fact that Defendants were forced to sue Jadoo in this forum.

based out of the forum state, repeatedly to license the patent. *Id.* Thereafter the defendant continued to threaten to sue the plaintiff for infringement. *Id.* Additionally, two representatives of defendants visited plaintiffs' facilities in California to demonstrate the technology underlying the patent at issue. *Id.* Collectively, this conferred specific jurisdiction as the activities were sufficiently directed at the forum state and the actions related to enforcement of the patent at issue in the suit. *Id.* Here, Plaintiffs point to no such pervasive threats having been made against an entity sitting in California, nor do Plaintiffs allege Defendants also visited the accused company— rendering this case distinguishable.

The additional cases cited by Plaintiffs on this issue are distinguishable for similar reasons; hiring an attorney in the forum supports jurisdiction, but in conjunction with other substantial or significant patent-enforcement activities in the forum. *See Apple Inc.*, 506 F. Supp. 3d at 963-64 (finding hiring forum attorneys weighed in favor of finding specific jurisdiction but resting the holding upon the defendant patentee owner having litigated six lawsuits in the district regarding similar patents). As explained above, the single prior enforcement action in this case is not substantial. Accordingly, *Apple* is inapposite. And *Lynwood Investments* is likewise inapposite because it is not a patent case and does not apply the relevant patent-enforcement specific jurisdiction analysis. *Lynwood Invs. CY Ltd. v. Konovalov*, 2021 WL 1198915 (N.D. Cal. Mar. 30, 2021) (Koh, J.). In any event, the court in *Lynwood* only held that hiring an attorney in the state was but one factor supporting finding jurisdiction, not that doing so alone would support such a finding. *Id.* at *11.[11]

---

[11] Specifically, in *Lynwood* the suit was about an international company (the defendant) attempting to steal computer software known as NGINX. 2021 WL 1198915 at *11. The company engaged in a number of activities relating to the attempted takeover of the NGINX software/company in the forum. *Id.* Namely, defendant formed three corporate entities in California that were going to use the software, raised capital in California surrounding the software, traveled back and forth to meet with NGINX representatives in California, and engaged a California-based attorney law firm as counsel for NGINX as part of their attempt to take it over. *Id.* This collectively conferred specific jurisdiction. *Id.* In other words, this case involved numerous interactions with the forum state relating to the underlying dispute. Hiring an attorney in the state specifically to effectuate the complained of behavior (taking over NGINX) was one of many interactions conferring jurisdiction. Accordingly, this case does not stand for the proposition that hiring an attorney in the state confers jurisdiction on its own.

United States District Court
Northern District of California

1        All in all, these cases do not stand for the proposition that hiring an attorney in the forum

2   state in the manner alleged here confers jurisdiction.  Rather, they show that the defendant must

3   engage in compounding enforcement-related activity, e.g., traveling to the accused company's

4   facilities in the forum state to demonstrate the technology at issue and send threats of enforcement

5   to forum state addresses.  *Elecs. For Imaging*, 340 F.3d at 1347.  Or the defendant must otherwise

6   engage in substantial and/or significant prior enforcement actions in the forum state in addition to

7   hiring the attorney.  *See Apple Inc.*, 506 F. Supp. 3d at 963–64.  These circumstances are not

8   present here.

9              c.    Suing Companies Selling Products to California Residents

10        Plaintiffs also briefly argue that jurisdiction is proper in this district because Defendants

11   have sued companies that sell products to California residents for infringement (e.g., Peloton) out

12   of state.  *See* Opp'n at 12-13.  However, filing suit against a resident of the forum state outside of

13   that state does not constitute enforcement activity within the forum state.  *New World Int'l, Inc. v.*

14   *Ford Glob. Techs., LLC*, 2016 WL 1069675, at *6 (N.D. Tex. Mar. 16, 2016), *aff'd*, 859 F.3d

15   1032 (Fed. Cir. 2017), *and aff'd*, 859 F.3d 1032 (Fed. Cir. 2017); *see also Adobe Sys. Inc. v. Tejas*

16   *Rsch., LLC.*, 2014 WL 4651654, at *5 (N.D. Cal. Sept. 17, 2014) ("[T]he fact that [defendant] has

17   pursued enforcement actions against California residents in the Eastern District of Texas does not

18   support the exercise of personal jurisdiction of [defendant] in California").  The link here is even

19   more attenuated, as Plaintiffs point to Defendants suing companies that are not even residents of

20   California, but that sell products to California residents, out of state.  *See* Opp'n at 12-13.

21   Accordingly, this does not support finding sufficient minimum contacts in the present suit.[12]

22   //

23

24   [12] Plaintiffs erroneously point to *Campbell Pet Company v. Miale*, 542 F.3d 879, 886 (Fed. Cir.
2008) to support finding jurisdiction on this basis.  But that case has nothing to do with the theory
25   that Plaintiffs set forth.  Rather, in *Campbell Pet Company*, the Federal Circuit found that a
defendant company sending a representative to a convention located in the forum state to threaten
26   to bring infringement actions against those companies amounted to minimum contacts with the
forum state.  *Id.* at 885-87.  But suing a company that sells products to California residents is not
27   the same as traveling to California to threaten to sue companies for infringement; the connection
to California is much more attenuated in the former scenario.  Accordingly, this case does not
28   support Plaintiffs' theory.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     For these reasons, the Court finds that it lacks both general and specific jurisdiction over

2   the Defendants.[13]

3               d.   Reasonableness of Exercising Personal Jurisdiction

4     The Court also notes that, in addition to insufficient minimum contacts there are also

5   serious questions whether the exercise of personal jurisdiction would be reasonable in this case

6   (i.e., step two of the specific jurisdiction analysis).  *See Burger King*, 471 U.S. at 476-77

7   (considering interests of the forum state in the litigation and interest of the plaintiff in litigating the

8   matter in the state, among other factors, in assessing reasonableness).  For example, it is difficult

9   to discern California's sovereign interest in this matter which involves a dispute between two

10   foreign corporations, neither of which are focused on California.  California residents appear to be

11   affected only incidentally.

12   B.   Jurisdictional Discovery

13     Plaintiffs argue briefly that if the Court is not satisfied that general jurisdiction over

14   Defendants is proper, this Court should order jurisdictional discovery as to Defendants' sales,

15   advertising, and commercialization efforts in California.  Opp'n at 17 (citing *Calix Networks, Inc.*

16   *v. Wi-LAN, Inc.*, No. C-09-06038-CRB (DMR), 2010 U.S. Dist. LEXIS 97657 (N.D. Cal. Sep. 8,

17   2010)).

18     Because jurisdictional discovery is "an issue not unique to patent law…[we apply] the law

19   of the regional circuit[.]"  *Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d

20   1364, 1371 (Fed. Cir. 2010).  Under Ninth Circuit precedent, "[a] district court is vested with

21   broad discretion to permit or deny [jurisdictional] discovery[.]"  *Laub v. U.S. Dep't of the Interior*,

22   _____

23   [13] Plaintiffs' supplemental filing identifying two recent cases finding venue proper over related
     DISH entities in the Central District of California does not change the calculus.  Docket No. 65
24   (citing  *Entropic Communications, LLC v. DISH Network Corporation, et al.*, No. 2:23-cv-01043
     (C.D. Cal. Jan. 10, 2024) Docket No. 269; *Entropic Commc'ns, LLC v. DIRECTV, LLC*, 2022 WL
25   19076758 (E.D. Tex. Oct. 24, 2022)).  The fact that an action accusing DISH of infringement can
     properly be venued in California because DISH "committed acts of infringement and has a regular
26   and established place of business in the district," *Entropic Communications, LLC v. DISH
     Network Corporation, et al.*, No. 2:23-cv-01043 (C.D. Cal. Jan. 10, 2024) Docket No. 269 at 4
27   (citing 28 U.S.C. § 1400(b)), does not establish jurisdiction over DISH as the patentee in a
     declaratory relief action.  As noted above, in a suit seeking declaratory judgment for patent
28   infringement, commercialization efforts of the defendant do not establish minimum contacts. *See*
     Section IV.A.2. The focus is on the patentee's enforcement actions in the forum.

342 F.3d 1080, 1093 (9th Cir. 2003). "Where a district court concludes that the existing record is insufficient to support personal jurisdiction and the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery, the plaintiff is entitled to jurisdictional discovery." *Smugmug*, 2009 U.S. Dist. LEXIS 71305, at *9 (citing *Trintec Indus.*, 395 F.3d at 1282). Jurisdictional discovery is appropriate "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). By contrast, "a refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Martinez*, 764 F.3d at 1070 (citation omitted). A request for jurisdictional discovery "must articulate the specific discovery Plaintiffs seek to conduct and how such discovery will enable them to make a prima facie showing of jurisdictional facts with respect to [the Defendant]." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 905 (N.D. Cal. 2021).

As stated above, exercise of general jurisdiction is appropriate in extremely narrow circumstances aside from the state of a corporation's principal place of business or state of incorporation. *See* Section IV.A.1. Plaintiffs have not identified any reason to believe that jurisdictional discovery will reveal that Defendants' contacts with California are so continuous and systematic as to make this an "exceptional case" where general jurisdiction is proper. In such a case, jurisdictional discovery is not warranted. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) ("Plaintiffs sought jurisdictional discovery without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery could be helpful to the Court, and their request amounted to only a mere hunch.") (citation omitted). For the same reason, and others, *Calix Networks, Inc. v. Wi-LAN, Inc.*, (cited by Plaintiffs) is inapposite. 2010 U.S. Dist. LEXIS 97657 (N.D. Cal. Sep. 8, 2010) (granting jurisdictional discovery where plaintiff presented specific evidence of defendant's history of activities in the forum prior to the suit to support request and parties already agreed to limited jurisdictional discovery but not to scope).

Additionally, as this Court explained in *Dormoy v. Hireright, LLC*, when a plaintiff seeks

19

jurisdictional discovery to assert general jurisdiction over a public company (like Defendants), that company typically already has widely available information:

> Plaintiff has failed to provide any evidence to support his requests for discovery, nor has he explained how discovery could be helpful to the Court or provide any proposed discovery for the Court to consider. It is also worth noting that, where a plaintiff is asserting general jurisdiction with respect to a company, there might typically be publicly available information demonstrating that the defendant company is at home in the state. Given the lack of any factual predicate to support Plaintiff's request and the absence of any details of what Plaintiff seeks to discover, Plaintiff's request for jurisdictional discovery is denied.

2023 U.S. Dist. LEXIS 139090, at *16-17.  Similarly, here, given the lack of any details as to what Plaintiff seeks to discover and the lack of any suggestion that discovery would turn up other litigation brought in California to enforce the patents at issue, the Court denies jurisdictional discovery.

C.     Transfer or Dismissal

When a Court lacks personal jurisdiction over Defendants, it may also consider transfer under 28 U.S.C. § 1631 (transfer for want of jurisdiction) instead of dismissal.  Defendants briefly address this option in their opening motion, *see* D's Mot. at 8, but they primarily seek dismissal under Federal Rule of Civil Procedure 12(b)(2) if jurisdiction is lacking.  *See generally* D's Mot. Plaintiffs do not argue for this option.  *See* Opp'n at 23.   Neither party explains why transfer, as opposed to dismissal, would be appropriate and neither affirmatively argues this is the most appropriate option.  *See generally* D's Mot.; Opp'n.  Moreover, the parties dispute whether the District of Utah is indeed an appropriate forum for this action.  The Court is hesitant to prejudge the matter by effecting a transfer.  Accordingly, dismissal is appropriate.

D.     Motion to Enjoin and Motion to Amend Case Caption

Because this Court lacks personal jurisdiction over Defendants and dismisses this action, the remaining issues presented in Plaintiffs' Motion to Enjoin Defendants from Pursuing Late Filed Action (Docket No. 36) and Plaintiffs' Motion to Amend Case Caption (Docket No. 32) at rendered moot.[14]

---

[14] *See, e.g.*, *Entrepreneur Media, Inc. v. Eygn Ltd.*, 2008 U.S. Dist. LEXIS 127084, at *21 (C.D.

United States District Court
Northern District of California

## V.     **CONCLUSION**

Defendants are not subject to personal jurisdiction in this District. General jurisdiction is improper because Defendants are neither incorporated nor have a principal place of business here, and no exception from the traditional bases of general jurisdiction is justified.  There is no basis for specific jurisdiction as Defendants have not engaged in substantial enforcement actions in this state and additional activity does not warrant exercise of jurisdiction.  Further, Plaintiffs have failed to adequately show why jurisdictional discovery is warranted.  Plaintiffs' motion to enjoin pursuant to the first-to-file rule and motion to amend the case caption in this action are moot. Accordingly, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Plaintiffs' additional motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: January 24, 2024

_____
EDWARD M. CHEN
United States District Judge

---

Cal. Dec. 17, 2008) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986), *superseded by statute on other grounds by* 28 U.S.C. § 1391 (explaining that the first-to-file rule may be used to enjoin a later-filed action where the first district "has jurisdiction over all parties involved").